UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In re:                                                          Chapter 11

**AC I TOMS RIVER LLC,**                                        Case No. 16-22023 (RDD)

                              Debtor.
-----------------------------------------------------------------x


### THIRD AMENDED PLAN OF REORGANIZATION OF
### AC I TOMS RIVER LLC


**ROBINSON BROG LEINWAND
GREENE GENOVESE & GLUCK P.C.**
**Attorneys for the Debtor**
875 Third Avenue
New York, New York 10022
Tel. No.:  212-603-6300

**A. Mitchell Greene, Esq.**


**Dated:**  New York, New York
           October 31, 2016

**AC I TOMS RIVER LLC** the debtor and debtor in possession (the "Debtor"), proposes the following third amended plan of reorganization (the "Plan") pursuant to sections 1121(a), 1122 and 1123 of title 11 of the United States Code.

## ARTICLE 1

### DEFINITIONS

Unless the context otherwise requires (i) the following terms shall have the following meanings when used in this Plan; (ii) any capitalized term that is used in this Plan and not defined in this Article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit references in the Plan are to the respective section of, article of or exhibit to the Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions except as stated otherwise in the Plan; (vii) any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (ix) the rules of construction set forth in section 102 of the Bankruptcy Code shall govern construction of the Plan; and (x) any reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code,

refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and effective on the Petition Date, except to the extent, if any, that any post-Petition Date amendment to the Bankruptcy Code applies retroactively to cases filed on the Petition Date.

1.1     "**Administrative Bar Date**" means the first Business Day that is 30 days after the Effective Date.

1.2     "**Administrative Claim**" means a Claim for, or request for payment of, an Administrative Expense (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) as to which any objection has been resolved by a Final Order allowing such claim in whole or in part, to the extent such claim is Allowed.

1.3     "**Administrative Expense**" means any cost or expense of administration of this Case, other than Bankruptcy Fees, allowable under sections 503(b), 330 or 331 of the Bankruptcy Code.

1.4     "**Administrative Tax Claim**" means an Administrative Claim for a tax due to a Governmental Unit.

1.5     "**Allowed Claim**" means a Claim or any portion thereof against the Debtor that has not been disallowed pursuant to a Final Order and is not a Disputed Claim and (i) with respect to which a Proof of Claim has been timely filed with the clerk of the Bankruptcy Court or, (ii) if no Proof of Claim has been filed, that has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent.

1.6    "**Allowed Interest**" means an Interest in the Debtor that has not been

disallowed and is not a disputed Interest with respect to which (i) a Proof of Interest has been

timely filed or, (ii) if no Proof of Interest has been timely filed, that has been or hereafter is listed

by the Debtor in the Schedules.

1.7    "**APA**" means the agreement of purchase and sale between the Debtor as

Seller and the Successful Purchaser for the purchase of the Property.

1.8    "**Applicable Rate of Interest**" means (i) in the case of any Claim for

which interest has not been asserted, the Federal Judgment Rate; and (ii) for any Claim in which

interest has been asserted, the applicable contract rate of interest as set forth therein, subject to

the Debtor's rights to object to such interest or otherwise enter into an agreement with the

Holder of such Claim that establishes the applicable rate of interest.

1.9    "**Available Cash**" means the sum of cash remaining in the Debtor's

Estate.

1.10    "**Bankruptcy Code**" means title 11 of the United States Code, as

amended from time to time and effective as to cases filed on the Petition Date.

1.11    "**Bankruptcy Court**" means the United States Bankruptcy Court for the

Southern District of New York or the United States District Court for the Southern District of

New York to the extent it withdraws the reference over all or any portion of these Chapter 11

Cases pursuant to section 157(d) of title 28 of the United States Code.

1.12    "**Bankruptcy Fees**" means all fees and charges assessed against the Estate

under section 1930 of title 28 of the United States Code.

1.13    "**Bankruptcy Rules**" means (i) the Federal Rules of Bankruptcy

Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the

Southern District of New York, in effect on the Petition Date, together with any and all

amendments and modifications thereto that were subsequently made applicable to these Chapter

11 Cases.

1.14    "**Bar Date**" means May 20, 2016.

1.15    "**Business Day**" means any day other than a Saturday, Sunday, or other

day on which commercial banks in New York, New York are authorized or required by law to

close, or other Legal Holiday.

1.16    "**Case**" means the case under chapter 11 of the Bankruptcy Code

commenced in the Bankruptcy Court on the Petition Date and styled *In re AC I Toms River LLC*,

Case No. 16-22023 (RDD).

1.17    "**Cash**" means, on any Business Day, immediately available funds, in

United States dollars, which may be spent or transferred without restriction no later than the next

Business Day.

1.18    "**CBRE**" means CBRE, Inc., the entity appointed to act as Receiver for

the Property in the RCG Foreclosure Proceeding.

1.19    "**Claim**" means a "claim," as defined in section 101(5) of the Bankruptcy

Code.

1.20    "**Class**" means a category of substantially similar Allowed Claims or

Allowed Interests as established pursuant to article 3 of the Plan.

1.21    **"Closing"** means the closing of the sale of the Property to the Successful Purchaser.

1.22    **"Closing Date"** means the date of the Closing of the sale of the Property to the Successful Purchaser.

1.23    **"Confirmation"** means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

1.24    **"Confirmation Date"** means the date on which the Confirmation Order is entered by the Bankruptcy Court, provided that the Confirmation Order becomes a Final Order.

1.25    **"Confirmation Order"** means an Order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, in form and substance reasonably satisfactory to the Debtor.

1.26    **"Creditor"** means a Holder of an Allowed Claim.

1.27    **"Cure Amount"** means any amount required, pursuant to sections 365(b)(1)(A) and 365(b)(1)(B) of the Bankruptcy Code, to cure any defaults or compensate the non-debtor party to any Executory Contract or Unexpired Lease for any actual pecuniary loss resulting from a default in respect of an Executory Contract or Unexpired Lease.

1.28    **"Debtor"** means AC I Toms River LLC.

1.29    **"Disbursing Agent"** means Robinson Brog Leinwand Greene Genovese & Gluck P.C., the Debtor's counsel.

1.30    "**Disclosure Statement**" means the *Disclosure Statement for the Plan of Reorganization of AC I Toms River LLC,* including all exhibits, attachments or amendments thereto, approved by Final Order of the Bankruptcy Court.

1.31    "**Disputed Claim**" means

(a)    any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed;

(b)    any Claim (including an Administrative Expense Claim), or portion thereof, that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, or the estimation of such Claim, has been filed with the Bankruptcy Court within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order;

(c)    Until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim represented by a Proof of Claim shall be deemed to be a Disputed Claim in its entirety if, (x) the amount specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (y) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (z) no corresponding Claim has been listed in the Schedules.

1.32    "**Disputed Claim Reserve**" means the segregated account or accounts established by the Disbursing Agent pursuant to section 7.7 of the Plan**.**

1.33    "**Effective Date**" means the first Business Day after the Closing Date.

1.34    "**Estate**" means the Estate of the Debtor created on the Petition Date pursuant to section 541 of the Bankruptcy Code.

1.35    "**Executory Contract**" means an executory contract within the meaning of section 365 of the Bankruptcy Code.

1.36    "**Final Order**" means a judgment, order, ruling or other decree of the Bankruptcy Court (or court of competent jurisdiction) entered by the Clerk on the docket of the Chapter 11 Case (or on the docket of any court of competent jurisdiction) that has not been reversed, vacated or stayed and as to which (i) the time to appeal, petition for *certiorari* proceeding or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* proceeding, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Bankruptcy Rule 9023 or Bankruptcy Rule 9024, or any analogous rule under the Bankruptcy Rules (or rule of a court of competent jurisdiction), may be filed relating to such order shall not cause such order not to be a Final Order.

1.37    "**Holder**" means a Person holding a Claim or Interest.

1.38   "**Interest**" means an equity interest in the Debtor or the Debtor's affiliates, AC I Toms River Mezz LLC and AC I Inv Toms River LLC.

1.39   "**Interest Holder**" means the Holder of an Allowed Interest in the Debtor.

1.40   "**Leases**" means any Unexpired Lease of real property between the Debtor and its Tenants, if any.

1.41   "**Legal Holiday**" means a "Legal Holiday" as that term is defined in Bankruptcy Rule 9006(a).

1.42   "**Lien**" means any charge against or interest in property to secure payment of a debt or performance of an obligation.

1.43   "**Order**" means an order of the Bankruptcy Court.

1.44   "**Person**" means a person as defined in 11 U.S.C. § 101(41).

1.45   "**Petition Date**" means January 8, 2016, the date on which this Case was commenced by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code by the Debtor.

1.46   "**Plan**" means this *Plan of Reorganization of AC I Toms River LLC,* as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

1.47   "**Post Effective Date Debtor**" mean the Debtor from and after the Effective Date.

1.48    "**Priority Non-Tax Claim**" means that portion of an Allowed Claim, other than a Priority Tax Claim, an Administrative Tax Expense Claim, a Secured Claim, or Bankruptcy Fees, entitled to priority in payment under Bankruptcy Code Section 507(a) or (b).

1.49    "**Priority Tax Claim**" means an Allowed Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.50    "**Professional**" means all professionals employed by the Debtor under sections 105, 327 or 330 of the Bankruptcy Code to render professional services in the Chapter 11 Case pursuant to a Final Order.

1.51    "**Professional Fees**" means compensation for services rendered, and reimbursement of expenses incurred, by Professionals through the Confirmation Date, as allowed and awarded by Final Order following application, in accordance with sections 330 and 331 of the Bankruptcy Code.

1.52    "**Proof of Claim**" means a proof of Claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.53    "**Proof of Interest**" means a proof of an Interest filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.54    "**Property**" means the real property and improvements thereon located at 1358 Hooper Avenue, Toms River, New Jersey, commonly known as Hooper Commons.

1.55    "**Pro Rata**" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

1.56    **"RCG"** means RCG LV Debt IV Non-Reit Assets Holdings, LLC, the lender pursuant to the Promissory Note dated June 28, 2011 and RCG Security Documents, as defined herein.

1.57    **"RCG Foreclosure Proceeding"** means the action commenced prepetition by RCG in the Superior Court of New Jersey, Chancery Division: Ocean County, Docket No. F-022458-14, seeking to foreclose on its mortgage on the Property.

1.58    **"RCG Note"** means collectively, each and every agreement, promissory note, including any amendment or modification thereof, or allonge thereto, evidencing a claim held by RCG.

1.59    **"RCG Secured Claim"** means the Secured Claim against the Debtor, or the Property, on account of the RCG Note or the RCG Security Documents.

1.60    **"RCG Security Documents"** means each and every mortgage, assignment of rents, security agreements, and/or any such other documents granting RCG a lien on the Property to secure the RCG Note.

1.61    **"Receiver"** means CBRE, Inc., the rent receiver appointed in the RCG Foreclosure Proceeding.

1.62    "**Released Parties**" shall have the meaning set forth in section 8.2 of this Plan.

1.63    **"Sale Proceeds"** means the net proceeds the Debtor receives from the sale of the Property to Successful Purchaser.

1.64    "**Schedules**" mean the schedules of assets and liabilities, any amendments with respect thereto, and the *Statement of Financial Affairs* filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.65    "**Secured Claim**" means an Allowed Claim, including all amounts, if any, allowed pursuant to section 506(b) of the Bankruptcy Code, to the extent that it is secured by a Lien on Property in which the Estate has an interest or that is subject to set-off under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the Estate's interest in such Property or to the extent of the amount subject to set-off, as applicable, as determined by a Final Order pursuant to section 506(a) of the Bankruptcy Code or as provided for in the Plan.

1.66    "**Successful Purchaser**" means the successful bidder at the auction sale for the Property.

1.67    "**Tenants**" means all non-Debtor parties to Leases with the Debtor for space on the Property, if any.

1.68    "**Transfer Taxes**" means any and all stamp taxes or similar taxes, if and as applicable and imposed by a Governmental Unit with respect to the transfer of a property or interest therein.

1.69    "**Unsecured Claim**" means a Claim against the Debtor that is not an Administrative Claim, an Administrative Tax Claim, a Bankruptcy Fee, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim.

1.70   "**Unsecured Creditor**" means the Holder of an Unsecured Claim.

1.71   "**Unexpired Lease**" means an unexpired lease within the meaning of section 365 of the Bankruptcy Code.

## ARTICLE 2

### TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims or Allowed Priority Tax Claims.  Such Claims, to the extent Allowed, shall receive the treatment provided in this article 2 in full satisfaction, release and discharge thereof.

2.1   **Administrative Bar Date**.  Except as otherwise provided in sections 2.2, 2.3 and 2.4 of the Plan, requests for payment of Administrative Expenses must be filed no later than the Administrative Bar Date which is defined as the first business day that is 30 days after the Effective Date.  Holders of Claims for payment of Administrative Expenses that do not file requests for the payment of Administrative Expenses on or before the Administrative Bar Date shall be forever barred from asserting such Claims against the Debtor or its Property.

2.2   **Professional Compensation and Reimbursement**. Each Person seeking an award by the Bankruptcy Court of Professional Fees shall file its final application for approval of its Professional Fees no later than 60 days after the Effective Date. Each Holder of an Allowed Claim for Professional Fees shall receive from the Disbursing Agent, in full satisfaction of such Allowed Claim, Cash in the amount of such Allowed Claim within three days of the entry of a Final Order Allowing such Claim.  For purposes of this Plan, the Receiver shall be deemed a professional and shall file the appropriate application for compensation due, if any.

Debtor's manager, GC Realty Advisors LLC, shall be entitled to seek approval of compensation in the amount of $100,000, inclusive of expenses, for serving as manager of the Debtor and restructuring officer of the Debtor during this chapter 11 proceeding.

2.3    **Administrative Claims**. Subject to the provisions of article 7 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (x) the Effective Date, (y) the date payment of such Claim is due under the terms thereof or applicable law, or (z) three business days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor and the Holder of such Claim; *provided, however,* that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full or performed by the Debtor in accordance with the terms and conditions of the  particular transaction giving rise to such Administrative Claim and any agreements relating thereto, *further provided however,* that the Receiver shall pay all outstanding obligations of the Property through the Effective Date and shall not be discharged until such payments are made.

2.4    **Administrative Tax Claims.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, all allowed Administrative Tax Claims held by Governmental Units shall be paid, in Cash, in full either (i) on or prior to the Effective Date, or (ii) upon such other terms as may be agreed to, in writing, between the Debtor and such Governmental Units on or before the Confirmation Date.

2.5    **Priority Tax Claims.**  Subject to the provisions of article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of Priority Tax Claims, and

except as may be otherwise mutually agreed in writing between the Debtor and such Governmental Units, all Allowed Priority Tax Claims shall be paid by the Debtor in Cash in full, together with interest on or prior to the Effective Date.

2.6     **Bankruptcy Fees.**  All fees and charges assessed against the Debtor under section 1930 of title 28 of the United States Code and any applicable interest thereon shall be paid by the Debtor, in full, in Cash by the Effective Date, until the closing, conversion or dismissal of this Case, whichever is earlier.

## ARTICLE 3

### CLASSIFICATION OF CLAIMS AND INTERESTS

Except as otherwise provided in article 2, Allowed Claims and Allowed Interests are classified as set forth in this article 3.  A Claim or Interest is in a particular Class designated herein only to the extent such Claim or Interest (i) fits within the description of such Class and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date.

3.1     **Class 1 –RCG Secured Claim**. Class 1 consists of the Allowed RCG Secured Claim.

3.2     **Class 2 – Unsecured Claims.**  Class 2 consists of all Allowed Unsecured Claims.

3.3     **Class 3 –Interests.**  Class 3 consists of all Interests in the Debtor.

# ARTICLE 4

## TREATMENT OF CLAIMS AND INTERESTS

Allowed Claims in Classes 1 and 2 are impaired and are entitled to vote to accept or reject the Plan.  Allowed Interests in Class 3 are either unimpaired and therefore deemed to accept the Plan or are impaired and shall be deemed to reject the Plan.  Therefore, either (a) under Section 1126(f) of the Bankruptcy Code, Holders of such interests are conclusively presumed to accept the Plan, or (b) under Section 1126(g) of the Bankruptcy Code, holders of such interests are deemed to reject the plan.  Accordingly, votes of interest holders will not be solicited.  The members of each Class shall receive the following treatment under the Plan in full satisfaction, release and discharge thereof.

4.1    **Class 1 – RCG Secured Claim.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of the Allowed RCG Secured Claim, which amount shall be determined by the Bankruptcy Court[1], RCG shall receive payment on account of the Allowed RCG Secured Claim from the Sale Proceeds, less application of all amounts collected by the Receiver and paid to RCG and application of funds held in CBRE's accounts and all escrow accounts maintained by RCG with respect to the Mortgage Loan.

---

[1] Debtor believes the Allowed RCG Secured Claim is no more than $20,000,000.  Debtor reserves all rights to object to the proof of claim filed by RCG, including, but not limited to the dollar amount of the claim, default interest charges, late fees and professional fees, including but not limited to an objection under Section 1124 or any other applicable provision of the Bankruptcy Code.

4.2.    **Class 2 – Unsecured Claims.**  Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of the Unsecured Claims, the holders of Allowed Unsecured Claims shall receive on the Effective Date their pro rata share of the remaining Sale Proceeds after payment is made in full (or appropriate amounts reserved to pay in full) to administrative claims, priority tax claims and the Allowed RCG Secured Claim.

4.3    **Class 3 - Interests**.  After payment is made in full, (or appropriate amounts reserved for payment in full) on account of all Allowed Claims, and appropriate amounts reserved for Disputed Claims as set forth in Section 7.7 of the Plan, in full satisfaction, release and discharge of and in exchange for its interest in the Debtor, the remaining balance of the sale proceeds, if any, shall be distributed to AC I Toms River Mezz LLC, the 100% owner of the Debtor.  After the Closing, all interests in the Debtor shall be canceled and of no further force and effect.

### ARTICLE 5

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1    **Assumption and Assignments of Executory Contracts and Unexpired Leases.** Upon the Closing Date, all Executory Contracts and Unexpired Leases to which Debtor is a party and which are set forth on the relevant schedule to the governing APA, shall be assumed by the Debtor and assigned to the Successful Purchaser in accordance with Section 365 of the Bankruptcy Code and any applicable sale approval order or the Confirmation Order.  The management agreement with Armstrong Management Company as manager for the Property agreement shall be rejected as of the Closing Date.

5.2     **Assumption Cure Payments**.  Except as otherwise agreed to by the parties, on the Closing Date, the Debtor or any Successful Purchaser, shall cure any and all undisputed defaults under any Executory Contract or Unexpired Lease that is assumed pursuant to the Plan in accordance with Section 365 of the Bankruptcy Code. Unless the parties to the contract or lease agree otherwise, all disputed defaults that are required to be cured shall be cured by the later to occur of (i) ten (10) days after the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto and (ii) the Effective Date.

5.3     **Rejection Claims.** Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtor shall be treated as Unsecured Claims**.**

5.4     **Bar to Rejection Claims.**  A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor no later than 30 days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely filed unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the Effective Date.  Any such Proof of Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor, its successors or their respective properties.

## ARTICLE 6

### IMPLEMENTATION OF THE PLAN

6.1     **Implementation.**  The Debtor shall take all necessary steps, and perform all

necessary acts, to consummate the terms and conditions of the Plan.  The Confirmation Order shall

contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, directing the

Debtor and any other necessary party to, among other things, (i) execute or deliver or to join in the

execution or delivery of any instrument required to effect a transfer of equity of the Debtor  required

by the Plan, and (ii) perform any act, including the satisfaction of any lien, and/or the release of any

judgment or discharge of the receiver that is necessary for the consummation of the Plan.

6.2     **Plan Funding**.  Funding for the Plan payments due on the Effective Date and

thereafter shall be made from the Sale Proceeds and the application of funds held in the Receiver's

accounts and funds in all escrow accounts maintained by RCG with respect to the Mortgage Loan.

6.3     **Transfer Taxes.**  Pursuant to N.J.S.A. 46:15-10 and section 1146(a) of the

Bankruptcy Code, as applicable, the issuance, transfer, or exchange of any security and the making

or delivery of any instrument of transfer in connection with or in furtherance of the Plan, (including

any instrument executed in furtherance of the transactions contemplated by the Plan), shall not be

subject to tax under any law imposing a stamp tax, real estate Transfer Tax, mortgage recording tax

or similar tax, including any such taxes due on any refinancing or sale of the Property in connection

with or in furtherance of the Plan and the funding requirements contained herein, and to the extent

provided by N.J.S.A. 46:15-10  and Section 1146(a), if any, shall not be subject to any state, local or

federal law imposing such tax.

6.4    **Vesting of Assets.**  Except as otherwise provided in the Plan, on the Closing Date, the Property and any other purchased assets as set forth in the APA shall vest in the Successful Purchaser free and clear of all Liens, Claims and encumbrances.  On the Closing Date, any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.  Any remaining property of the Estate shall re-vest in the Post-Effective Date Debtor who may operate, buy, use, acquire, and dispose of the property of the Estate and may settle and compromise any claims, interests and causes of action in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

6.5    **Execution of Documents.**

(a)    Upon entry of the Confirmation Order, the Debtor, and any necessary party thereto, shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.

(b)    Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor shall be authorized to execute, in the name of any necessary party any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance (including, any Lien, Claim or encumbrance that is to be released and satisfied upon the Debtor's compliance with the provisions of article 4 of the Plan) not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

6.6    **Filing of Documents.**  Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall

be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

6.7    **Preservation of Rights of Action.**

(a)  Except as otherwise provided in the Plan, or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Debtor shall retain any claims, rights and causes of action (i) arising under sections 510 and 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date, or the Estate of the Debtor, and arising under any provision of state or federal law, or any theory of statutory or common law or equity.

(b)    Any recovery received by the Debtor through the prosecution, settlement or collection of any such claim, right or cause of action, shall be retained by the Debtor following the satisfaction of all other Allowed Claims under the terms of the Plan.

(c)    Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition Date documents, agreements or claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Debtor of the existence, validity allowance, or amount of any such claim, document or agreement.  The Debtor expressly reserves the right to challenge the existence, validity, allowance, or amount of any such claim, document or agreement.

6.8 **Post-Confirmation Management and Compensation/Post Effective Date Debtor**. The Debtor shall continue in existence as the Post Effective Date Debtor whose activities shall be limited to matters related to the implementation of the Plan and matters reasonably incidental thereto. The Post Effective Date Debtor will have all of the rights, powers and duties necessary to carry out its responsibilities under the Plan and shall continue to be managed by GC Realty Advisors LLC until its dissolution. As soon as practicable after the Closing, the Post Effective Date Debtor shall take all necessary steps to effectuate its dissolution in accordance with applicable law.

Subject to the Receiver making payment of all outstanding obligations of the Property through the Effective Date, and accounting for all payments made to RCG and all amounts held in CBRE accounts, CBRE shall be discharged as of the Effective Date and shall turnover all operational documents to the Successful Purchaser of the Property.

After entry of the Confirmation Order, all references in the Plan and Disclosure Statement to the "Debtor" shall be to the Post Effective Date Debtor.

## ARTICLE 7

### PROVISIONS GOVERNING DISTRIBUTIONS

7.1 **Disbursing Agent.** The Disbursing Agent shall distribute all Cash or other property to be distributed under the Plan and may employ or contract such third parties as may be necessary to assist in or perform the distribution of Cash or other property under the Plan. Pending the final distribution of all sums distributable under the terms of the Plan (including the delivery to the Debtor of unclaimed distributions pursuant to section 7.14 of the Plan), the Disbursing Agent

shall have full authority to sign checks on any bank account of the Debtor to the extent necessary to make any payment or distribution contemplated by the Plan.

7.2     **Timing of Distributions Under the Plan.** Subject to sections 7.6 and 7.8 of the Plan, any payments, distributions or other performance to be made pursuant to the Plan on account of any Disputed Claim, shall be deemed to be timely made if made on or within ten days following the later of (i) the expiration of any applicable objection deadline with respect to such Disputed Claim or (ii) such other times provided in the Plan.

7.3     **Method of Payment.**  Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.

7.4     **Claims Objection Deadline.**  Unless otherwise ordered by the Bankruptcy Court for cause, the Debtor may file and serve any objection to any Claim at any time, but in no event after the later to occur of (i) 60 days after the Effective Date, or (ii) 60 days after the date proof of such Claim or a request for payment of such Claim is filed.

7.5     **Prosecution of Objections.**  After the Confirmation Date, only the Debtor shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims.  The Debtor may comprise any objections to Disputed Claims without further order of the Court.

7.6     **No Distribution Pending Allowance.**  Notwithstanding any other provision of the Plan, no payment or distribution of any kind shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order.

7.7     **Escrow of Cash Distributions.**  (a)  On any date that distributions are to be made under the terms of the Plan, the Debtor shall make available any and all funds required to be disbursed on that date, and the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Claims or as Priority Non-Tax Claims pursuant to sections 503 and 507 of the Bankruptcy Code, (ii) claims of Governmental Units for any tax, (iii) any disputed Cure Amount, and (iv) any amount due but not payable on the Effective Date on account of Administrative Claims or claims entitled to priority pursuant to section 503 and 507 of the Bankruptcy Code.  The Disbursing Agent shall also segregate any interest, dividends or other proceeds of such Cash.  Such Cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

(b)     The Debtor shall have the right to seek an Order of the Bankruptcy Court, after notice and hearing, estimating or limiting the amount of Cash that must be so deposited on account of any Disputed Claim.  Any Creditor whose Claim is so estimated shall have no recourse to any assets theretofore distributed on account of any Allowed Claim if the Allowed Claim of that Creditor as determined by Final Order exceeds the amount so deposited.  Such Creditor shall have recourse first, to the undistributed assets in the Disputed Claims Reserve (on a Pro Rata basis with other Creditors of the same Class who are similarly situated) that exceed the aggregate amount

of all Disputed Claims allowed by Final Order, or not yet resolved, and second any unpaid amount shall be an obligation of the Debtor.

7.8     **Distribution After Allowance.**  Within 15 days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a Holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.

7.9     **Investment of Segregated Cash.**  To the extent practicable, the Disbursing Agent may invest any Cash segregated on account of a Disputed Claim, disputed Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by section 345 of the Bankruptcy Code; *provided, however,* that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash or proceeds.  Segregated Cash shall be maintained in an authorized depository.

7.10    **Distribution After Disallowance.**  Subject to section 7.7 of the Plan, the Cash segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof, if any, remaining after all Disputed Claims have been resolved by Final Order shall revert to the Debtor.

7.11    **Surrender of Instruments; Execution of Satisfactions and Releases.**

(a)  Notwithstanding any other provision of the Plan, no Creditor that holds a note or other instrument evidencing such Creditor's Claim may receive any distribution with respect

to such Claim unless and until the original note or other original instrument evidencing such Claim shall have been validly surrendered to the Disbursing Agent at the sole cost and expense of such Creditor.

(b)    Any Cash or property to be distributed pursuant to the Plan on account of any such Claim shall, pending surrender, be treated as an undeliverable distribution pursuant to section 7.13 of the Plan.

(c)    In the event any Creditor is unable to surrender a note or other instrument evidencing a Claim against the Debtor that has been destroyed, lost or stolen, such entity may receive a distribution with respect to such Claim by presenting to the Disbursing Agent, in a form acceptable to the Disbursing Agent:  (i) proof of such entity's title to such Claim; (ii) an affidavit to the effect that the same has been lost and after diligent search cannot be located; and (iii) such indemnification as may be required by the Disbursing Agent and all other entities deemed appropriate by the Disbursing Agent from any loss, action, suit or any claim whatsoever which may be made as a result of such entity's receipt of a distribution under the Plan.

(d)    All questions as to the validity, form or eligibility of any note or other instrument evidencing a Claim so surrendered shall be resolved by Final Order of the Bankruptcy Court.  The Disbursing Agent shall not be under any duty to give notification of defects in such tender or shall incur liability for failure to give notification of such defects.

7.12    **Delivery of Distributions.**  Except as provided in sections 7.13, 7.14 and 7.15 of the Plan, distributions to Holders of Allowed Claims shall be made: (1) at the addresses set forth on the respective Proofs of Claim filed by such Holders; (2) at the addresses set forth in any written

notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address.

7.13    **Undeliverable Distributions.**  (a)  If the distribution to the Holder of any Claim is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then current address.  Undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to section 7.14 of the Plan.

(b)    Until such time as an undeliverable distribution becomes an unclaimed distribution pursuant to section 7.14 of the Plan, within 30 days after the end of each calendar quarter following the Effective Date, the Disbursing Agent shall make distributions of all Cash that has become deliverable during the preceding quarter.  Each such distribution shall include the net return yielded from the investment of any undeliverable Cash, from the date such distribution would have been due had it then been deliverable to the date that such distribution becomes deliverable.

(c)    Nothing contained in the Plan shall require the Debtor to attempt to locate any Holder of an Allowed Claim.

7.14    **Unclaimed Distributions.**  Any Cash or other assets to be distributed under the Plan shall revert to the Post Effective Date Debtor if it is not claimed by the entity entitled thereto before the later of (i) one year after the Effective Date; (ii) one year after such scheduled payment to such entity under Article 4 of this Plan; or (iii) one year after an Order allowing the Claim of that entity becomes a Final Order, and such entity's claim shall be reduced to zero.

Thereafter any such Cash shall be distributed to holders of Allowed Claims in Class 2 to the extent

the Sale Proceeds are insufficient to satisfy such claims in full.  Any excess Cash remaining after

payment has been made in full to holders of Allowed Claims in Class 2 shall be distributed to AC I

Toms River Mezz, LLC, the Debtor's 100% Interest Holder.

       7.15    **Set-offs.**  The Disbursing Agent, may, but shall not be required to, set-off

against the distributions to be made pursuant to the Plan, the claims, obligations, rights, causes of

action and liabilities of any nature that the Debtor may hold against the Holder of an Allowed Claim,

*provided, however,* that neither the failure to effect such a set-off nor the allowance of any claim

hereunder shall constitute a waiver or release by the Debtor of any such claims, obligations, rights,

causes of action and liabilities that the Debtor has or may have against such Holder.  To the extent

the Disbursing Agent elects to effectuate a set-off, it shall notify the Holder of the Allowed Claim in

writing at least ten (10) days prior to effectuating the set-off.  To the extent the Holder of an

Allowed Claim objects to the set-off, a written objection shall be provided to the Disbursing Agent,

no later than three (3) days prior to the set-off date or the objection shall be waived.

**ARTICLE 8**

**INJUNCTION AND EXCULPATION**

       8.1    **Injunction.**  Except (i) as otherwise provided under Final Order entered

by the Bankruptcy Court or (ii) with respect to the Debtor's obligations under the Plan, the entry

of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any

Claim held against the Debtor as of the date of entry of the Confirmation Order (i) the

commencement or continuation of any action, the employment of process, or any act to collect,

enforce, attach, recover or offset from the Debtor, from the Property, or from property of the

Estate that has been or is to be distributed under the Plan, and (ii) the creation, perfection or

enforcement of any lien or encumbrance against the Property and any property of the Estate that

has been or is to be, distributed under the Plan.  Except as otherwise provided in the

Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against

the commencement or continuation of any action, the employment of process, or any act to

collect, recover or offset from the Debtor, from the Property, or from property of the Estate, any

claim, any obligation or debt that was held against the Debtor by any person or entity as of the

Confirmation Date except pursuant to the terms of the Plan. The entry of the Confirmation Order

shall permanently enjoin all Creditors, their successors and assigns, from enforcing or seeking to

enforce any such Claims.

        8.2     **Limitation of Liability**.  To the extent provided in 11 U.S.C. § 1125(e),

neither the Debtor, the Interest Holders nor any of their respective officers, directors, members,

general partner, managers or employees (acting in such capacity), nor any professional person

employed by any of them (the "Released Parties") shall have or incur any liability to any entity

for any action taken or omitted to be taken in connection with or related to the formulation,

preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement

or any contract, instrument, release or other agreement or document created or entered into, or

any other action taken or omitted to be taken in connection with this case or the Plan except in

the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty,

criminal conduct, unauthorized use of confidential information that causes damages, or ultra

vires acts. Nothing contained herein shall limit the liability of the Debtor's professionals

pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct.  From and after

the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be

submitted as, a complete defense to any claim or liability released pursuant to Article 8 of the

Plan**.**

        8.3    **Release**.  Except as otherwise provided in the Plan, upon the Effective

Date, in consideration of the Cash and other property to be distributed to or on behalf of the

holders of Claims and Interests under the Plan, the Plan shall be deemed to resolve all disputes

and constitute a settlement and release, between and among the Debtor, on the one hand, and

each Creditor and Interest Holder, on the other, from any claim or liability, whether legal,

equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed,

matured, unmatured, fixed or contingent, known or unknown, that the Debtor, its Creditors or

Interest Holder ever had or now have through the Effective Date in connection with their Claim

or Interest (including, without limitation, any claims the Debtor may assert on its own behalf or

on behalf of Creditors or Interest Holders pursuant to sections 510 and 542 through 553 of the

Bankruptcy Code, any claims Creditors or Interest Holders may have asserted derivatively on

behalf of the Debtor absent bankruptcy, any claims based on the conduct of the Debtor's

business affairs prior or subsequent to the commencement of the Case or any claims based on the

negotiation, submission and confirmation of the Plan), provided however that nothing in the Plan

or the Confirmation Order shall effect a release of any claim for any debt owed to the United

States Government arising under the Internal Revenue Code; any state, city or municipality

arising under any state, city or municipal tax code;  any environmental laws or any criminal laws

of the United States or any state, city or municipality.  Nothing in the Confirmation Order or the

Plan shall enjoin the United States or any state or local authority from bringing any claim, suit,

action or other proceedings against the Released Parties for any claim, suit or action arising

under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws

or any criminal laws of the United States or any state, city or municipality.  Nothing in the

Confirmation Order or the Plan shall exculpate any party from any liability to the United States

Government or any of its agencies or any state, city or municipality arising under the Internal

Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal

laws of the United States or any state.  Notwithstanding anything to the contrary in this release

provision or any confirmation order, RCG's claims against any non-debtor obligor on the RCG

Note or the RCG Security Documents, including any guarantors, are not released or waived, and

are preserved.

     8.4    **Discharge**.    On the Confirmation Date of this Plan, the Debtor will be

discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of

the Effective Date, to the extent specified in §1141(d)(1)(A) of the  Code, except that the Debtor

will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in

§1141(d)(6)(A); or (iii) of a kind specified in §1141(d)(6)(B).

### ARTICLE 9

### MISCELLANEOUS PROVISIONS

     9.1    **Orders in Aid of Consummation.**  Pursuant to sections 105, 1141, 1142 and

1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of

Confirmation directing the implementation of matters or actions required by the Plan.

     9.2    **Compliance with Tax Requirements.**  In connection with the Plan, the

Debtor and the Disbursing Agent shall comply with all withholding and reporting requirements

imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements; *provided, however,* that the transfer of any Cash, or other assets or interests hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code and/or N.J.S.A. 46:15-10.

9.3     **Due Authorization by Creditors.**  Each and every Creditor who accepts the distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

9.4     **Amendments.** The Plan may be altered, amended or modified by the Debtor, in writing, signed by the Debtor, at any time before the substantial consummation of the Plan, as provided in sections 1101 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  Any substantive modification shall require notice and a hearing before the Bankruptcy Court for approval of the proposed modification of the Plan. The Debtor in its own capacity and the Disbursing Agent shall be deemed a Plan proponent for purposes of Section 1127 of the Bankruptcy Code.

9.5     **Revocation.**  The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order.  If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor; or (ii) prejudice in any manner the rights of the Debtor or any other party in any further proceedings involving the Debtor or its Estate.

9.6    **Request for Relief Under Section 1129(b).**  If the Plan is accepted by one or more, but not all, impaired Classes of Claims, the Debtor may request confirmation under section 1129(b) of the Bankruptcy Code of any Class of Claims, subject to any modification of the Plan made pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

9.7    **Filing of Additional Documents.**  Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, and Debtor shall be responsible for the preparation and filing of any reports necessary until the entry of a Final Decree.  Debtor shall also pay any fees due the U.S. Trustee's Office until entry of a Final Decree.

9.8    **Section Headings.**  The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

9.9    **Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.10    **Successors and Assigns.**  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

9.11    **Notices.**  All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a)    if to the Debtor, at c/o Armstrong Realty Management, 149 Madison Avenue, 11th Floor, New York, NY 10016, and at c/o GC Realty Advisors. LLC, 7280 West

Palmetto Park Road, Suite 106-N, Boca Raton, FL 33433, with a copy to Robinson Brog Leinwand

Greene Genovese & Gluck, P.C., 875 Third Avenue, 9th floor, New York, New York 10022, Attn:

A. Mitchell Greene, Esq.;

        (b)     if to any Creditor, at (i) the addresses set forth on the Proofs of Claim

filed by such Holders; (ii) the addresses set forth in any written notices of address changes delivered

to the Disbursing Agent after the date of any related Proof of Claim; or (iii) the address reflected in

the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written

notice of a change of address;

        (c)     if to any entity that has filed a notice of appearance, at the addresses

set forth on such notice of appearance;

9.12    **Governing Law.** Except to the extent that the Bankruptcy Code or

Bankruptcy Rules or other Federal law are applicable, the rights and obligations arising under the

Plan shall be governed by, and construed and enforced in accordance with the laws of the State of

New York without giving effect to the principles of conflict of laws thereof.

9.13    **Other Actions.** Nothing contained herein shall prevent the Debtor, Interest

Holders, or Creditors from taking such actions as may be reasonably necessary to consummate the

Plan, although such actions may not specifically be provided for within the Plan.

9.14    **Severability.** In the event any provision of the Plan is determined to be

unenforceable such determination shall in no way limit or affect the enforceability and operative

effect of any or all other provisions of the Plan.

9.15    **Business Day.** In the event that the Plan requires an act to be performed on a

day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

**ARTICLE 10**

**RETENTION OF JURISDICTION**

10.1    **Retention of Jurisdiction.**  Notwithstanding the entry of the Confirmation

Order or the occurrence of the Effective Date, until the Case is closed, the Bankruptcy Court shall

retain and have original, but not exclusive, jurisdiction to:

(a)    Insure that the Plan is consummated, and to enter any Order pursuant

to section 1142(b) of the Bankruptcy Code, to compel the Debtor, the Interest Holders and any other

necessary party, to take such action and execute such documents to effectuate the Plan;

(b)    Consider any modification of the Plan proposed pursuant to section

1127 of the Bankruptcy Code and Bankruptcy Rule 3019;

(c)    Allow, disallow, determine, liquidate, classify or establish the priority,

secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of

any request for payment of any Administrative Expense, the resolution of any and all objections to

the allowance or priority of Claims or Interests, and the resolution of any adversary proceeding;

(d)    Grant or deny any and all applications for allowance of compensation

or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any

period ending on or before the Effective Date;

(e)    Resolve any motions pending on the Effective Date to assume, assume

and assign or reject any Executory Contract or Unexpired Lease to which the Debtor is a  party or

with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate,

any and all Claims arising therefrom;

(f)     Ensure that distributions to Holders of Allowed Claims are accomplished in accordance with the provisions of this Plan;

(g)     Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(h)     Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Case, including, but not limited to any Order necessary to enforce the provisions of article 7 of the Plan;

(i)     Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any entity's obligations incurred in connection with the Plan;

(j)     Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(k)     Remedy any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(l)    Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(m)    Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n)    Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order.

(o)    Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement; and

(p)    Enter an Order of Final Decree concluding the Case.

10.2    **Post-Closing Jurisdiction.**  Notwithstanding the entry of a final decree or an order closing the Case, the Bankruptcy Court shall retain jurisdiction to reopen the Case for the purpose of enforcing, by injunction or otherwise, the terms of the Plan, the Confirmation Order and any final decree, including, without limitation, the enforcement of any rights of the Debtor.

## ARTICLE 11

### CONDITION TO THE EFFECTIVE DATE

11.1    **Condition Precedent to Effectiveness.** The Plan shall not become effective unless and until it has been confirmed and the following conditions have been satisfied or waived in full:

(a)    The Confirmation Order shall have been entered in this case and no stay or injunction shall be in effect precluding the consummation of the transactions contemplated by this Plan and the Confirmation Order shall not have been modified or vacated on appeal.

(b)    The Closing has occurred.

## ARTICLE 12

### CLOSING THE CASE

12.1   **Substantial Consummation.**  Until the occurrence of the Effective Date and substantial consummation of the Plan, the Debtor, its Property and its Creditors shall be subject to further Orders of the Bankruptcy Court.

12.2   **Closing the Case.** Upon the substantial consummation of the Plan, the Debtor shall expeditiously move for the entry of a final decree closing the Case and such other relief as may be just and appropriate.

**Dated:**   New York, New York
October 31, 2016

AC I TOMS RIVER, LLC
By GC Realty Advisors LLC

By: **/s/ David Goldwasser**
         David Goldwasser, Manager

**ROBINSON BROG LEINWAND
GREENE GENOVESE & GLUCK P.C.**
**Attorneys for the Debtor**
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.:  (212) 603-6300

By: **/s/ A. Mitchell Greene**
         A. Mitchell Greene