**ROBINSON BROG LEINWAND GREENE**
  **GENOVESE & GLUCK P.C.**
875 Third Avenue
New York, New York 10022
A. Mitchell Greene
*Attorneys for the Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

In re:                                                    Chapter 11

**AC I TOMS RIVER LLC,**                    Case No.:  16-22023 (RDD)


                                    Debtor.
----------------------------------------------------------X

### FOURTH AMENDED DISCLOSURE STATEMENT FOR FOURTH AMENDED PLAN OF REORGANIZATION OF AC I TOMS RIVER LLC

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OF REORGANIZATION OF AC I TOMS RIVER LLC.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.  THE INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPLETION OR AMENDMENT.**

                              **ROBINSON BROG LEINWAND GREENE**
                              **GENOVESE & GLUCK P.C.**
                              **Attorneys for the Debtor**
                              875 Third Avenue, 9th Fl.
                              New York, New York 10022
                              Tel. No.: 212-603-6300
                              **A. Mitchell Greene, Esq.**

**Dated:**  New York, New York
            November 15, 2016

## DISCLAIMER

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

ALL CREDITORS AND HOLDERS OF EQUITY INTERESTS SHOULD READ THIS DISCLOSURE STATEMENT AND ALL EXHIBITS HERETO, INCLUDING THE PLAN, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THE DISCLOSURE STATEMENT AND THE PLAN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN. THE TRANSMISSION OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF. AFTER THE DATE HEREOF, THERE CAN BE NO ASSURANCE THAT (A) THE INFORMATION AND REPRESENTATIONS CONTAINED HEREIN WILL BE MATERIALLY ACCURATE, AND (B) THIS DISCLOSURE STATEMENT CONTAINS ALL MATERIAL INFORMATION.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NONBANKRUPTCY LAW. THIS DISCLOSURE STATEMENT WAS PREPARED TO PROVIDE HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR WITH "ADEQUATE INFORMATION" (AS DEFINED IN THE BANKRUPTCY CODE) SO THAT THEY CAN MAKE AN INFORMED JUDGMENT ABOUT THE PLAN.

THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, AS A STIPULATION OR AS A WAIVER, BUT, RATHER, AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE REORGANIZATION OR THE PLAN ON HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTOR.

A glossary of terms frequently used in this disclosure statement, is set forth in Article 1 of the plan of liquidation filed with the Bankruptcy Court.

## SUMMARY

The Debtor, **AC I Toms River LLC,** (the "Debtor"), has filed its *Fourth Amended Plan of Reorganization of AC I Toms River LLC* dated November 15, 2016 (the "Plan"), with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). This *Fourth Amended Disclosure Statement for Fourth Amended Plan of Reorganization of AC I Toms River LLC* (the "Disclosure Statement") is being submitted to the Bankruptcy Court for approval for use in connection with the solicitation of acceptances of the Plan from holders of Claims against and Interests in the Debtor pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code").

In the Debtor's opinion, the treatment of claims under the Plan provides a greater recovery for Creditors than that which is likely to be achieved under other alternatives for the reorganization or liquidation of the Debtor.

**Accordingly, the Debtor believes that Confirmation of the Plan is in the best interests of Creditors.**

### THE DEBTOR

The Debtor is the owner of the real property and improvements thereon located at 1400 Hooper Avenue, Toms River, New Jersey from which the shopping center commonly known as Hooper Commons operates (the "Property"). The Property consists of 28 storefronts, of which 25 are occupied. The anchor tenants at the Property are Dollar Tree, DSW and Michaels. The Property is currently the subject of a foreclosure action commenced by RCG LV Debt IV Non-Reit Holdings, LLC ("RCG") in connection with a mortgage loan (the "Mortgage Loan") extended to the Debtor made pursuant to a Mortgage Loan Agreement (the "Mortgage Loan Agreement"), evidenced by the RCG Note in the original principal amount of $17,820,000. CBRE is the court appointed rent receiver who currently manages the Property.

The Debtor's 100% equity holder is AC I Toms River Mezz LLC ("Mezz") which is owned 100% by AC I Inv Toms River LLC ("INV"), which is owned by AC Retail Equity Fund I LLC, Tibor Klein, Chana Ringel and Michael Krull. The Plan provides for the Property to be sold and the proceeds distributed to creditors on account of their Allowed Claims in accordance with the priorities established by the Bankruptcy Code.

### THE PLAN

The Plan provides for a sale of the Property the proceeds of which will be utilized to fund creditor distributions on account of their Allowed Claims in accordance with the priorities established by the Bankruptcy Code.

The table below provides a summary of the classification and treatment of Claims under the Plan. The figures set forth in the table below represent the Debtor's best estimate of the aggregate amount of Claims in the Case. These estimates are based on an analysis of the Schedules filed by the Debtor, the Proofs of Claims filed by Creditors, and certain other documents of public record. There can be no assurance that Claims will be allowed by the Bankruptcy Court in the amounts set forth below. The aggregate amount of Allowed Claims may be significantly lowered from the amounts set forth below as the result of objections to claims which may be brought by the Debtor or through stipulations which may be negotiated with various creditors.

| Class and Estimated Amount[1] | Type of Claim or Equity Interest | Summary of Treatment |
|---|---|---|
| $0.00 | Administrative Claims (excluding Claims for professional compensation and reimbursement and Administrative Tax Claims, but including post-petition ordinary course liabilities) | **Non-Voting.** Subject to the provisions of article 7 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (x) the Effective Date, (y) the date payment of such Claim is due under the terms thereof or applicable law, or (z) three business days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor and the Holder of such Claim; *provided, however,* that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full or performed by the Debtor in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto, *further provided however*, that the Receiver shall pay all outstanding obligations of the Property through the Effective Date and shall not be discharged until such payments are made. |
| $ 0.00 | Administrative Tax Claims | **Non-Voting**. Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, all allowed Administrative Tax Claims held by Governmental Units shall be paid, in Cash, in full either (i) on or prior to the Effective Date, or (ii) upon such other terms as may be agreed to, in writing, between the Debtor and such Governmental Units on or before the Confirmation Date. |
| As of October 31, 2016, Debtor's | Administrative Claims for Professional | **Non-Voting.** Each Person seeking an award by the Bankruptcy Court of Professional Fees shall file its final |

---

[1] Amounts set forth in this chart are not and should not be deemed admissions by the Debtor as to validity or amount of any scheduled or filed claim. Debtor reserves all rights to object to any scheduled or filed claim in the Debtor's case. The Debtor is in the process of reviewing all claims and determining whether any objections should be filed.

| Class and Estimated Amount[1] | Type of Claim or Equity Interest | Summary of Treatment |
|---|---|---|
| counsel is owed approximately $300,000 in fees and expenses (exclusive of retainer)<br><br>Receiver fees unknown<br><br>Manager fees and expenses $100,000 | Compensation and Reimbursement[2] | application for approval of its Professional Fees no later than 60 days after the Effective Date. Each Holder of an Allowed Claim for Professional Fees shall receive from the Disbursing Agent, in full satisfaction of such Allowed Claim, Cash in the amount of such Allowed Claim within three days of the entry of a Final Order Allowing such Claim. For purposes of this Plan, the Receiver shall be deemed a professional and shall file the appropriate application for compensation due, if any.<br><br>Debtor's manager, GC Realty Advisors LLC, was appointed as manager of the Debtor prior to the Petition Date. Debtor's manager shall be entitled to seek approval of compensation in the amount of $100,000, inclusive of expenses, for serving as manager of the Debtor and restructuring officer of the Debtor during this chapter 11 proceeding, and all parties' rights to object to any such application are specifically preserved. |
| $0 | Priority Tax Claims | **Non-Voting.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of Priority Tax Claims, and except as may be otherwise mutually agreed in writing between the Debtor and such Governmental Units, all allowed Priority Tax Claims shall be paid in Cash in full, together with the Applicable Rate of Interest on or prior to the Effective Date. |
| Class 1<br>Filed in the amount of 22,045,715.03[3] | Allowed RCG Secured Claim | **Impaired.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of the Allowed RCG Secured Claim, which amount shall be determined by the Bankruptcy Court[4], RCG shall receive payment on account of the Allowed RCG Secured Claim from the Sale Proceeds, less application of all amounts collected by the Receiver and paid to RCG and application of funds held in CBRE's accounts and all escrow accounts maintained by RCG with respect to the Mortgage Loan.<br><br>RCG has the right pursuant to Section 363(k) of the Bankruptcy Code to credit bid at the public auction sale for |

[2] Any agreement with respect to the waiver and/or modification of fees will be disclosed to the Court and the Office of the United States Trustee.

[3] RCG has filed its motion pursuant to 11 U.S.C. §§ 105(a), 502 and 506(a) and Rules 3001(f) and 3012 of the Federal Rules of Bankruptcy Procedure to determine the value of its secured claim, which RCG asserts is $23,157,997.59 as of October 31, 2016. Debtor reserves all rights to object to the proof of claim filed by RCG, including, but not limited to the dollar amount of the claim, default interest charges, late fees and professional fees, including but not limited to an objection under Section 1124 or any other applicable provision of the Bankruptcy Code.

[4] Debtor disputes the amount of RCG's claim and believes the Allowed RCG Secured Claim is no more than $20,000,000.

| Class and Estimated Amount[1] | Type of Claim or Equity Interest | Summary of Treatment |
|---|---|---|
| | | the Property which credit bid shall be in an amount up to and including the amount of the Allowed RCG Secured Claim. |
| Class 2 Approximately $748,187.00 in scheduled/filed claims excluding insider claims[5].

See attached schedule. | Unsecured Claims | **Impaired.**  Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of the Unsecured Claims, the holders of Allowed Unsecured Claims shall receive on the Effective Date their pro rata share of the remaining Sale Proceeds after payment is made in full (or appropriate amounts reserved to pay in full) to administrative claims, priority tax claims and the Allowed RCG Secured Claim. |
| Class 3 | Interests | **Impaired.** After payment is made in full, (or appropriate amount reserved for payment in full) on account of all Allowed Claims, and appropriate amounts reserved for Disputed Claims as set forth in Section 7.7 of the Plan, in full satisfaction, release and discharge of and in exchange for its interest in the Debtor, the remaining balance of the Sale Proceeds, if any, shall be distributed to AC I Toms River Mezz LLC, the 100% owner of the Debtor.  Any Sale Proceeds distributed to AC I Toms River Mezz LLC shall remain subject to all valid pledges, liens, claims and encumbrances in favor of any creditors of AC I Toms River Mezz LLC in the same priorities, and subject to the same defenses, as existed prior to the Petition Date.  After payment is made on account of any claims of creditors of AC I Toms River Mezz LLC, the remaining Sale Proceeds, if any, shall be distributed to AC I INV Toms River LLC, and subject to payment to creditors of AC I INV Toms River LLC, shall be distributed to its members, AC Retail Equity Fund I LLC, Tibor Klein, Chana Ringel and Michael Krull, in accordance with their percentage membership interests.  Thereafter, all interests in the Debtor, Mezz and INV shall be canceled and of no further force and effect. |

**CONFIRMATION OF THE PLAN**

Pursuant to section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan, on _____, **2016 at 10:00 a.m.,** Eastern Standard Time, in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601.  Objections, if any, to Confirmation of the Plan shall be filed and served on or before _____, **2016**.

---

[5] Amount does not include any dollar amount for the claim filed by insider Tibor Klein and the scheduled claims of insiders Armstrong Maintenance, Armstrong Management and Marsyll Management.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. The Debtor intends to seek Confirmation of the Plan at the Confirmation Hearing. In the event that any impaired Class of Claims does not accept the Plan, the Debtor may seek a "cram down" Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code. **The Debtor believes that the Plan satisfies all applicable requirements of section 1129(a) and section 1129(b) of the Bankruptcy Code**. See "ACCEPTANCE AND CONFIRMATION -- Requirements for Confirmation" for a description of such requirements.

In accordance with Section 1126(c) of the Bankruptcy Code and except as provided in Section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Claims of such Class that have timely and properly voted to accept or reject this Plan. Claims in Classes 1 and 2 are Impaired by this Plan. Interests in Class 3 are either unimpaired and therefore deemed to accept the Plan or are impaired and shall be deemed to reject the Plan. Therefore, either (a) under Section 1126(f) of the Bankruptcy Code, Holders of such interests are conclusively presumed to accept the Plan, or (b) under Section 1126(g) of the Bankruptcy Code, holders of such interests are deemed to reject the plan. Accordingly, votes of interest holders will not be solicited.

If all Classes have either accepted the Plan, been deemed to have accepted the Plan or are not entitled to vote, the Debtor shall request the Bankruptcy Court to confirm the Plan under Section 1129(a) of the Bankruptcy Code. In the event it is determined that an impaired class of interests exists, and if any Impaired Class fails to accept this Plan by the requisite statutory majorities, the Debtor reserves the right (i) to confirm this Plan by a "cram-down" of such non-accepting Class pursuant to Section 1129(b) of the Bankruptcy Code and (ii) to propose any modifications to this Plan and to confirm this Plan as modified, without re-solicitation, to the extent permitted by the Bankruptcy Code.

With the entry of the Confirmation Order, pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise provided in the Plan, the distributions provided for in the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims against the Debtor or any of its assets or properties, including but not limited to the Property, including any Claim accruing after the Petition Date and before the Confirmation Date. As of the Effective Date, all holders of Claims shall be precluded from asserting any Claim against the Debtor, its assets or properties or other interests in the Debtor, or the Property based on any transaction or other activity of any kind that occurred before the Confirmation Date except as otherwise provided in the Plan. Confirmation makes the Plan binding upon the Debtor, all Creditors and other parties regardless of whether they have accepted the Plan.

VOTING INSTRUCTIONS — SUMMARY

The following discussion summarizes more detailed voting instructions set forth in the section of this Disclosure Statement entitled "VOTING INSTRUCTIONS."  If you have any questions regarding the timing or manner of casting your ballot, please refer to the "VOTING INSTRUCTIONS" section of this Disclosure Statement and the instructions contained on the ballot that you received with this Disclosure Statement.

**General**.  The Debtor has sent to all of its known Creditors who are in Classes impaired under the Plan a ballot with voting instructions and a copy of this Disclosure Statement. Creditors may refer to the above chart to determine whether they are impaired and entitled to vote on the Plan.  Creditors should read the ballot carefully and follow the voting instructions. Creditors should only use the official ballot that accompanies this Disclosure Statement.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by (a) the Holders of two-thirds in amount and more than one-half in number of claims in each class who actually vote on the Plan.  In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if (i) the Bankruptcy Court finds that the Plan accords fair and equitable treatment, and does not discriminate unfairly, with respect to the class rejecting it and (ii) at least one impaired class of creditors excluding insiders has accepted the Plan.  See "REQUIREMENTS FOR CONFIRMATION" and "EFFECT OF CONFIRMATION."

**As the preceding paragraph makes evident, a successful reorganization depends upon the receipt of a sufficient number of votes in support of the Plan.  YOUR VOTE IS THEREFORE EXTREMELY IMPORTANT.  Creditors should exercise their right to vote to accept or reject the Plan.**

NOTICE TO HOLDERS OF CLAIMS AND INTERESTS

This Disclosure Statement is being furnished by the Debtor to the Debtor's known Creditors pursuant to section 1125(b) of the Bankruptcy Code in connection with a solicitation of acceptances of a plan of reorganization by the Debtor.  The Plan is filed with the Bankruptcy Court and is incorporated herein by reference.  Parties in interest may view the Plan on the Internet at http://www.nysb.uscourts.gov.[6]

The purpose of this Disclosure Statement is to enable you, as a Creditor whose Claim is in a Class impaired under the Plan, to make an informed decision in exercising your right to accept or reject the Plan.

---

[6]  A password is necessary for access to view documents on the Internet.

**THIS DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION THAT MAY BEAR UPON YOUR DECISION TO OBJECT TO CONFIRMATION OF THE PLAN PROPOSED BY THE DEBTOR.  PLEASE READ THIS DOCUMENT WITH CARE.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE DEBTOR.  THE STATEMENTS AND OPINIONS SET FORTH HEREIN ARE THOSE OF THE DEBTOR, AND NO OTHER PARTY HAS ANY RESPONSIBILITY WITH RESPECT THERETO.**

**THE PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY ANY BANKRUPTCY COURT, THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE FAIRNESS OR MERITS OF THE PLAN OR UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.  ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.**

The historical information concerning the Debtor has been prepared using the Debtor's books and records and certain filings made with the Bankruptcy Court.  The estimates of Claims set forth herein may vary from the final amounts of Claims allowed by the Bankruptcy Court.  While every effort has been made to ensure the accuracy of all such information, except as noted in the Disclosure Statement, the information presented herein is unaudited and has not been examined, reviewed or compiled by the Debtor's independent public accountants.

This Disclosure Statement contains a summary of certain provisions of the Plan and the transactions contemplated thereunder, and may contain descriptions of certain other related documents, if any.  While the Debtor believes that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents.  Reference is made to the Plan and the documents referred to herein and therein, if any, for a complete statement of the terms and provisions thereof.  In the event of any inconsistency between the terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling.  In reviewing the Plan and this Disclosure Statement, the reader should give special attention to "RISK FACTORS."  No statements or information concerning the Debtor, the Property, or its other assets, results of business operations or financial condition are authorized by the Debtor other than as set forth in this Disclosure Statement and the exhibits hereto (including the Plan).

Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition Date documents, agreements, or claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Debtors of the existence, validity, allowance, or amount of any such claim, document or agreement.  The Debtor expressly reserves the right to challenge the existence, validity, allowance, or amount of any such claim, document or agreement.

This Disclosure Statement is intended for the sole use of Holders of Claims and Interests to make an informed decision about the Plan. Each holder of a Claim and Interest should review this Disclosure Statement, the Plan and all exhibits hereto. Holders of Claims and Interest are urged to consult with their own legal and financial advisors.

No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and section 1125 of the Bankruptcy Code. No person has been authorized to use or promulgate any information concerning the Debtor or its business or the Plan, other than the information contained in this Disclosure Statement and the exhibits hereto. You should not rely on any information relating to the Debtor or its business or the Plan other than that contained in this Disclosure Statement and the exhibits hereto.

### RECOMMENDATION

In the Debtor's opinion, the treatment of Creditors under the Plan provides a greater recovery than is likely to be achieved under any other alternatives, including liquidation under Chapter 7. See "ALTERNATIVES TO THE PLAN." In particular, the Debtor believes that in a Chapter 7 liquidation, administrative costs will be greater, and only to the extent the Property was sold for a purchase price far in excess of the Allowed RCG Secured Claim, would Unsecured Creditors receive any distribution on account of their Claims. Further, the Debtor believes that the value of any distribution in a chapter 7 liquidation case will be discounted by the litigation and delays which will precede any such distribution.

**THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND INTEREST HOLDERS.**

### EVENTS LEADING TO CHAPTER 11

#### Securitization of the Property:

On or around June 28, 2011, RCG made a mortgage loan (the "Mortgage Loan") to the Debtor. The Mortgage Loan was made pursuant to a Mortgage Loan Agreement (the "Mortgage Loan Agreement"), evidenced by the RCG Note in the original principal amount of $17,820,000. The Debtor also executed, amongst other documents, an Assignment of Leases and Rents ("ALR") in connection with the Mortgage Loan (collectively, the "RCG Security Documents"). The Mortgage Loan is secured by, amongst other things, a first priority mortgage encumbering the Property.

Simultaneous with the Mortgage Loan to the Debtor, RCG also extended a $180,000 mezzanine loan to Mezz (the "Mezzanine Loan"), the Debtor's 100% interest holder, pursuant to a mezzanine loan agreement. The Mezzanine Loan is secured by, among other things, a pledge and security agreement encumbering Mezz's ownership interest in the Debtor.

The Debtor and Mezz each defaulted on their obligations under the Mortgage Loan and the Mezzanine Loan, although Debtor disputes the defaults based upon RCG's application of the rents collected at the Property and its application of the payments made by the Debtor on account of the Mortgage Loan and the Mezzanine Loan. RCG commenced a UCC foreclosure sale in connection with the Mezzanine Loan Default and a foreclosure action in connection with the Mortgage Loan default. The UCC sale was met with litigation commenced by Mezz in both New York and New Jersey where Mezz was successful in obtaining a TRO enjoining the UCC sale.

The foreclosure proceeding was commenced in June 2014. An order was entered in October 2014 appointing a rent receiver for the Property which Receiver continues to manage the Property by agreement post-petition between the Debtor, RCG and the Receiver. RCG submitted a motion for final judgment which was opposed by the Debtor, noting objections, amongst other things, to the calculations of default interest, late fees and attorneys fees. A hearing was scheduled for January 8, 2016 with respect to RCG's motion for final judgment in the foreclosure proceeding which was attended by counsel to the Debtor in the foreclosure proceeding. Simultaneous with the foreclosure judge rendering a ruling on the final judgment, Debtor filed its chapter 11 petition thereby rending any judgment or order entered subsequent to be void.

RCG's position is that the order entered in the foreclosure proceeding on January 8, 2016 was entered prior to and not simultaneous with or subsequent to the Debtor filing its chapter 11 petition.

On January 8, 2016, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code to protect its assets, including the Property.

## SIGNIFICANT EVENTS IN THE CHAPTER 11 CASE

On January 8, 2016, (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York, White Plains Division. The following discussion is intended to highlight some of the more significant events which have occurred during the pendency of the Debtor's case.

## RCG MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR TO DISMISS CHAPTER 11 CASE

On May 5, 2016, RCG filed a motion for relief from the automatic stay or to dismiss the chapter 11 case filed by the Debtor. A hearing on the motion was held on July 7, 2016. The Court carried the motion to the date of the hearing on the Debtor's Disclosure Statement, which was originally scheduled for a hearing on September 13, 2016, but was thereafter adjourned to September 29, 2016. After the continued hearing on September 29, 2016, RCG's motion was further adjourned to November 16, 2016.

**THE DEBTOR'S EXCLUSIVITY MOTION**

On May 6, 2016, Debtor filed its motion seeking an extension of its exclusive period within which to file a plan and solicit acceptances with respect thereto. Subsequent to filing its exclusivity motion, and in response to RCG's motion for relief from the automatic stay or to dismiss the chapter 11 case filed by the Debtor, on June 30, 2016, the Debtor filed its original plan and disclosure statement. A hearing on the exclusivity motion was held on July 7, 2016. The Court granted the exclusivity motion by order entered on July 21, 2016, extending the Debtor's exclusive right to solicit acceptances of its plan to and including October 31, 2016, and reserving the Debtor's right to seek additional extensions of its acceptance period and any party in interest's rights to seek to terminate such period, or to terminate the Debtor's exclusive plan period.

**THE RECEIVER STIPULATION**

Initially, the Debtor, RCG and the Receiver entered into a stipulation permitting the Receiver to continue to manage the Property through and including April 15, 2016. By written agreement which currently extends to November 23, 2016, the Receiver shall continue to manage the Property.

**RETENTION OF PROFESSIONALS**

Section 327(a) of the Bankruptcy Code provides that a debtor, with the court's approval, may employ one or more accountants or other professional persons that do not hold or represent an interest adverse to the estate and that are disinterested persons to represent or assist the debtor in carrying out its duties under the Bankruptcy Code. 11 U.S.C. § 327(a).

On February 17, 2016, the Debtor sought authority from this Court to retain the law firm of Robinson Brog Leinwand Greene Genovese & Gluck P.C., as their counsel. The application was granted pursuant to an order entered on February 19, 2016.

On October 12, 2016, the Debtor filed its application for authority to retain Holliday Fenoglio Fowler, L.P., as its exclusive real estate broker for the marketing and sale of the Property. Debtor's counsel, counsel to RCG and the Office of the United States Trustee have agreed to a form of retention order which will be submitted to the Court for approval and entry.

**BAR DATE**

In accordance with the requirements of section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, the Debtor has filed its Schedules of assets and liabilities, including schedules of all of its known creditors and the amounts and priorities of the Claims the Debtor believes are owed to such creditors. Pursuant to section 501 of the Bankruptcy Code, any creditor may file a Proof of Claim and, unless disputed, such filed Proof of Claim supersedes the amount and priority set forth in the Debtor's schedules. By order of the Bankruptcy Court dated

April 13, 2016, the last day for creditors to file Proofs of Claim in the Debtor's Chapter 11 case was fixed at May 20, 2016.  A total of 8 claims have been filed.

There can be no assurance that the Allowed Claims as determined by the Bankruptcy Court will be in the amounts and priorities stated in the Schedules filed by the Debtor or the Proofs of Claim filed by the Creditors.

**OPERATING REPORTS**

Pursuant to the requirements of the Office of the United States Trustee for the Southern District of New York, and in furtherance of the Receivership Stipulation, the Debtor requests copies of the monthly management reports from the Receiver which are then filed on the ECF docket of the Debtor's case.  Copies of such reports, once filed, may be obtained (i) from the Bankruptcy Court during normal business hours, (ii) upon written request made to counsel for the Debtor, or (iii) from the Bankruptcy Court's Electronic Case Filing System ("ECF")[7] which may be accessed at the Bankruptcy Court's Internet website at www.nysb.uscourts.gov.

**SUMMARY OF THE PLAN**

The following summary of the terms of the Plan is qualified in its entirety by reference to the provisions of the Plan, a copy of which is filed with the Clerk of the Bankruptcy Court and which is incorporated herein by reference.

**CLASSIFICATION OF CLAIMS AND INTERESTS**

Classification of claims is governed, in part, by sections 1122 and 1123(a) of the Bankruptcy Code.  Section 1123(a) requires that a plan designate classes of claims, requires that the plan specify the treatment of any impaired class of claims, and requires that the plan provide the same treatment for each claim of a particular class, unless the holder of a claim receiving less favorable treatment consents to such treatment.  11 U.S.C.§1123(a)(1), (3) and (4).  Section 1122(a) of the Bankruptcy Code provides, subject to an exception for administrative convenience, that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."

Article 3 of the Plan classifies the various Claims against and Interests in the Debtor into two (2) classes of Claims and one class of Interests:

Class 1 – RCG Secured Claim
Class 2 - Unsecured Claims
Class 3 - Interests

---

[7] Filing documents on the ECF requires a password which an attorney may obtain by contacting the Bankruptcy Court's technical assistance department, Monday through Friday, 9:00 a.m. to 4:00 p.m.

As set forth in Article 2 of the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code, certain Administrative Claims against the Debtor have not been classified. See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."

   **Class 1 – RCG Secured Claim.**  Class 1 consists of the RCG Secured Claim.

   **Class 2 –  Unsecured Claims**.  Class 2 consists of all Unsecured Claims.

   **Class 3 – Interests.**  Class 3 consists of all interests in the Debtor.

TREATMENT OF CLAIMS CLASSIFIED UNDER THE PLAN

   Article 4 of the Plan provide for the treatment of Claims classified in Article 3 of the Plan as follows:

   **Class 1 – RCG Secured Claim.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of the Allowed RCG Secured Claim, which amount shall be determined by the Bankruptcy Court[8], RCG shall receive payment on account of the Allowed RCG Secured Claim from the Sale Proceeds, less application of all amounts collected by the Receiver and paid to RCG and application of funds held in CBRE's accounts and all escrow accounts maintained by RCG with respect to the Mortgage Loan.

  RCG has the right pursuant to Section 363(k) of the Bankruptcy Code to credit bid at the public auction sale for the Property which credit bid shall be in an amount up to and including the amount of the Allowed RCG Secured Claim.

   **Class 2 – Unsecured Claims.**  Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of the Unsecured Claims, the holders of Allowed Unsecured Claims shall receive on the Effective Date their pro rata share of the remaining sale proceeds after payment is made in full (or appropriate amounts reserved to pay in full) to administrative claims, priority tax claims and the Allowed RCG Secured Claim.

   **Class 3 - Interests**.  After payment is made in full, (or appropriate amounts reserved for payment in full) on account of all Allowed Claims, and appropriate amounts reserved for Disputed Claims as set forth in Section 7.7 of the Plan, in full satisfaction, release and discharge of and in exchange for its interest in the Debtor, the remaining balance of the sale proceeds, if any, shall be distributed to AC I Toms River Mezz LLC, the 100% owner of the Debtor.  Any Sale Proceeds distributed to AC I Toms River Mezz LLC shall remain subject to all valid pledges, liens, claims and encumbrances in favor of any creditors of AC I Toms River

---

[8] Debtor believes the Allowed RCG Secured Claim is no more than $20,000,000.

Mezz LLC in the same priorities, and subject to the same defenses, as existed prior to the Petition Date.  After payment is made on account of any claims of creditors of AC I Toms River Mezz LLC, the remaining Sale Proceeds, if any, shall be distributed to AC I INV Toms River LLC, and subject to payment to creditors of AC I INV Toms River LLC, shall be distributed to its members, AC Retail Equity Fund I LLC, Tibor Klein, Chana Ringel and Michael Krull, in accordance with their percentage membership interests.  Thereafter, all interests in the Debtor, Mezz and INV shall be canceled and of no further force and effect.

## TREATMENT OF NON-CLASSIFIED CLAIMS

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims entitled to priority treatment under section 507(a)(1) of the Bankruptcy Code or Claims of Governmental Units entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.  Article 2 of the Plan provides for the manner of treatment of such non-classified Claims.

**Administrative Claims.**  Administrative Claims are the costs and expenses of administration of this Case, allowable under section 503(b) of the Bankruptcy Code, other than Bankruptcy Fees.  Administrative Claims include Claims for the provision of goods and services to the Debtor after the Petition Date, the liabilities incurred in the ordinary course of the Debtor's business (other than claims of governmental units for taxes or interest or penalties related to such taxes) after the Petition Date, Claims of professionals, such as attorneys, appraisers, and accountants, retained pursuant to an order of the Bankruptcy Court, for compensation and reimbursement of expenses under section 330 of the Bankruptcy Code, and tax claims for the period from the Petition Date to the Effective Date of the Plan.

Subject to the provisions of article 7 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (x) the Effective Date, (y) the date payment of such Claim is due under the terms thereof or applicable law, or (z) three business days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor and the Holder of such Claim; *provided, however,* that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full or performed by the Debtor in accordance with the terms and conditions of the  particular transaction giving rise to such Administrative Claim and any agreements relating thereto, *further provided however,* that the Receiver shall pay all outstanding obligations of the Property through the Effective Date and shall not be discharged until such payments are made.

Article 2 of the Plan sets a final date for the filing of Administrative Claims against the Debtor.  The Administrative Bar Date is the first Business Day that is 30 days after the Effective Date.  In the event that the Plan is confirmed, the Debtor shall deliver a notice of such bar date to all parties-in-interest.

**Professionals' Fees.**  Section 330 of the Bankruptcy Code sets the standard for the determination by the Bankruptcy Court of the appropriateness of fees to be awarded to Professionals retained by a Debtor in a case under the Bankruptcy Code.  In general, "bankruptcy legal services are entitled to command the same competency of counsel as other cases.  In that light, the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable service other than in a case under title 11."  124 Cong. Rec. H11091 (Daily ed. Sept. 28, 1978).

With respect to Professionals' Fees, the Plan provides that, subject to the approval of compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Debtor shall pay the Administrative Claims held by Bankruptcy Professionals as follows:

Each Person seeking an award by the Bankruptcy Court of Professional Fees shall file its final application for approval of its Professional Fees no later than 60 days after the Effective Date.  Each Holder of an Allowed Claim for Professional Fees shall receive from the Disbursing Agent, in full satisfaction of such Allowed Claim, Cash in the amount of such Allowed Claim within three days of the entry of a Final Order Allowing such Claim.  For purposes of the Plan, the Receiver shall be deemed a professional and shall file the appropriate application for compensation due, if any.

Debtor's manager, GC Realty Advisors LLC, was appointed as manager of the Debtor prior to the Petition Date.  Debtor's manager shall be entitled to seek approval of compensation in the amount of $100,000, inclusive of expenses, for serving as manager of the Debtor and restructuring officer of the Debtor during this chapter 11 proceeding, and all parties' rights to object to any such application are specifically preserved.

No later than three days prior to the Confirmation Date, each Professional shall provide the Debtor with an estimate of the total amount of compensation and expenses for which such Professional expects to seek final compensation pursuant to section 330 of the Bankruptcy Code.  Such estimates shall include estimated sums for the preparation and prosecution of any application for final compensation.  On the Effective Date, the Disbursing Agent shall segregate sufficient cash to pay all such estimated compensation and expenses in full unless otherwise agreed to by the Debtor and such Professionals; *provided, however,* that the failure of a Professional to provide such an estimate shall relieve the Debtor of its obligation to segregate funds for the payment therefore, but shall not relieve the Debtor of the obligation with respect to any allowed compensation and expense reimbursement.

All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to section 330 of the Bankruptcy Code no later than 30 days after the Effective Date.  Any such application timely filed shall be deemed to be an Administrative Claim, subject to the entry of a Final Order by the Bankruptcy Court approving such application.  Objections to any Professional's application for compensation

or reimbursement must be timely filed and served upon such Professional, and upon the Debtor in accordance with the Bankruptcy Rules or as may be agreed between the Professional and the objecting party.  Any such objection not timely filed and served shall be deemed to have been waived.

**Administrative Tax Claims.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, all allowed Administrative Tax Claims held by Governmental Units shall be paid, in Cash, in full either (i) on or prior to the Effective Date, or (ii) upon such other terms as may be agreed to, in writing, between the Debtor and such Governmental Units on or before the Confirmation Date.

**Priority Tax Claims**.  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of Priority Tax Claims, and except as may be otherwise mutually agreed in writing between the Debtor and such Governmental Units, all allowed Priority Tax Claims shall be paid in Cash in full, together with the Applicable Rate of Interest on or prior to the Effective Date.

**Bankruptcy Fees.**  All fees and charges assessed against the Debtor under section 1930 of title 28 of the United States Code and any applicable interest thereon shall be paid in full as required by statute and until the closing, conversion or dismissal of this Case, whichever is earlier, the Debtor shall continue to be responsible for the payment of any such fees and charges.

## DISPUTED CLAIMS AND INTERESTS

Except as otherwise explicitly provided in the Plan, nothing shall effect, diminish or impair the Debtor's rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, legal and equitable defenses to setoffs or recoupment against Unimpaired Claims, or recharacterization of Unimpaired Claims.

Article 7 of the Plan contains a mechanism for resolving disputes concerning the amount of certain Claims or Interests asserted against the Debtor by any Entity.

**Time to Object.** Unless otherwise ordered by the Bankruptcy Court, objections to the allowance of any Claim may be filed no later than the later to occur of (i) 60 days after the Effective Date or (ii) 60 days after the date proof of such Claim or Interest or a request for payment of such Claim is filed. Until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, Claims shall be deemed to be Disputed in their entirety if, (i) the amount specified in a Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (ii) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (iii) no corresponding Claim has been listed in the Schedules.

Debtor deems the scheduled and/or filed claims of Armstrong Management Corp. (scheduled in the amount of $106,948.11), Armstrong Maintenance Corp. (scheduled in the

amount of $57,613.75), Marsyll Maintenance Corp. (scheduled in the amount of $91,082.49) and Tibor Klein (filed without a designated amount, but with a reservation that "the Debtor may owe him in excess of $1,000,000 in unpaid distributions") to be insider claims not entitled to any distribution in connection with the Debtor's Plan.  If necessary, Debtor will file motions objecting to these scheduled and/or filed claims.

The claim filed by Tibor Klein is in an unliquidated amount and therefore Debtor has not and will not escrow amounts on account of this claim.

DISTRIBUTIONS UNDER THE PLAN

Article 7 contains provisions governing the making of distributions on account of Claims.  In general, any payments, distributions or other performance to be made pursuant to the Plan on account of any Allowed Claim shall be deemed to be timely made if made on or within ten days following the later of (i) the expiration of any applicable objection deadline with respect to Disputed Claims or (ii) such other times provided in the Plan.  All Cash payments to be made by the Debtor pursuant to the Plan shall be made by wire transfer or check drawn on a domestic bank.

**Disbursing Agent.**  Robinson Brog Leinwand Greene Genovese & Gluck P.C. shall be the Disbursing Agent and shall make distributions under the Plan. The Disbursing Agent may employ or contract such third parties as may be necessary to assist in or perform the distribution of the property under the Plan.  Pending the final distribution of all sums distributable under the terms of the Plan (including the delivery to the Debtor of unclaimed distributions pursuant to section 7.14 of the Plan), the Disbursing Agent shall have full authority to sign checks on any bank account of the Debtor to the extent necessary to make any payment or distribution contemplated by the Plan.

**Timing of Distributions Under the Plan.**  Subject to sections 7.6 and 7.8 of the Plan, any payments, distributions or other performance to be made pursuant to the Plan on account of any Disputed Claim, shall be deemed to be timely made if made on or within ten days following the later of (i) the expiration of any applicable objection deadline with respect to such Disputed Claim or (ii) such other times provided in the Plan.

**Method of Payment.**  Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by wire transfer of check drawn on a domestic bank.

**Claims Objection Deadline.**  Unless otherwise ordered by the Bankruptcy Court, the Debtor may file and serve any objection to any Claim at any time, but in no event after the later to occur of (i) 60 days after the Effective Date, or (ii) 60 days after the date proof of such Claim or a request for payment of such Claim is filed.

**Prosecution of Objections.**  After the Confirmation Date, only the Debtor shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claim. The Debtor may compromise any objections to Disputed Claims without further order of the Court.

**No Distribution Pending Allowance.**  Notwithstanding any other provision of the Plan, no payment or distribution of any kind shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order.

**Escrow of Cash Distributions.**  (a)  On any date that distributions are to be made under the terms of the Plan, the Debtor shall make available any and all funds required to be disbursed on that date, and the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Claims or as Priority Non-Tax Claims pursuant to sections 503 and 507 of the Bankruptcy Code, (ii) claims of Governmental Units for any tax, (iii) any disputed Cure Amount, and (iv) any amount due but not payable on the Effective Date on account of Administrative Claims or claims entitled to priority pursuant to section 503 and 507 of the Bankruptcy Code.  The Disbursing Agent shall also segregate any interest, dividends or other proceeds of such Cash.  Such Cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

(b)      The Debtor shall have the right to seek an Order of the Bankruptcy Court, after notice and hearing, estimating or limiting the amount of Cash that must be so deposited on account of any Disputed Claim.  Any Creditor whose Claim is so estimated shall have no recourse to any assets theretofore distributed on account of any Allowed Claim if the Allowed Claim of that Creditor as determined by Final Order exceeds the amount so deposited.  Such Creditor shall have recourse first, to the undistributed assets in the Disputed Claims Reserve (on a Pro Rata basis with other Creditors of the same Class who are similarly situated) that exceed the aggregate amount of all Disputed Claims allowed by Final Order, or not yet resolved, and second any unpaid amount shall be an obligation of the Debtor.

**Distribution After Allowance.**  Within 15 days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a Holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.

**Investment of Segregated Cash.**  To the extent practicable, the Disbursing Agent may invest any Cash segregated on account of a Disputed Claim, disputed Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by section 345 of the Bankruptcy Code; *provided, however,* that the Disbursing Agent shall be under no obligation to

so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash or proceeds.  Segregated Cash shall be maintained in an authorized depository.

**Distribution After Disallowance.**  Subject to section 7.7 of the Plan, the Cash segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof, if any, remaining after all Disputed Claims have been resolved by Final Order shall revert to the Debtor.

**Surrender of Instruments; Execution of Satisfactions and Releases.** (a) Notwithstanding any other provision of the Plan, no Creditor that holds a note or other instrument evidencing such Creditor's Claim may receive any distribution with respect to such Claim unless and until the original note or other original instrument evidencing such Claim shall have been validly surrendered to the Disbursing Agent at the sole cost and expense of such Creditor.

(b)  Any Cash or property to be distributed pursuant to the Plan on account of any such Claim shall, pending surrender, be treated as an undeliverable distribution pursuant to section 7.13 of the Plan.

(c)   In the event any Creditor is unable to surrender a note or other instrument evidencing a Claim against the Debtor that has been destroyed, lost or stolen, such entity may receive a distribution with respect to such Claim by presenting to the Disbursing Agent, in a form acceptable to the Disbursing Agent:  (i) proof of such entity's title to such Claim; (ii) an affidavit to the effect that the same has been lost and after diligent search cannot be located; and (iii) such indemnification as may be required by the Disbursing Agent and all other entities deemed appropriate by the Disbursing Agent from any loss, action, suit or any claim whatsoever which may be made as a result of such entity's receipt of a distribution under the Plan.

(d)  All questions as to the validity, form or eligibility of any note or other instrument evidencing a Claim so surrendered shall be resolved by Final Order of the Bankruptcy Court.  The Disbursing Agent shall not be under any duty to give notification of defects in such tender and shall not incur liability for failure to give notification of such defects.

**Delivery of Distributions.**  Except as provided in sections 7.13, 7.14 and 7.15 of the Plan, distributions to Holders of Allowed Claims shall be made: (1) at the addresses set forth on the respective Proofs of Claim filed by such Holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address.

**Undeliverable Distributions.**  (a) If the distribution to the Holder of any Claim is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then current

address.  Undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to section 7.14 of the Plan.

(b)  Until such time as an undeliverable distribution becomes an unclaimed distribution pursuant to section 7.14 of the Plan, within 30 days after the end of each calendar quarter following the Effective Date, the Disbursing Agent shall make distributions of all Cash and other property that has become deliverable during the preceding quarter.  Each such distribution shall include the net return yielded from the investment of any undeliverable Cash, from the date such distribution would have been due had it then been deliverable to the date that such distribution becomes deliverable.

(c)  Nothing contained in the Plan shall require the Debtor or Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

**Unclaimed Distributions.**  Any Cash or other assets to be distributed under the Plan shall revert to the Post Effective Date Debtor, if it is not claimed by the entity entitled thereto before the later of (i) one year after the Effective Date; (ii) one year after such scheduled payment to such entity under Article 4 of this Plan; or (iii) one year after an Order allowing the Claim of that entity becomes a Final Order, and such entity's claim shall be reduced to zero.  Thereafter any such Cash shall be distributed to holders of Allowed Claims in Class 2 to the extent the Sale Proceeds are insufficient to satisfy such claims in full.  Any excess Cash remaining after payment has been made in full to holders of Allowed Claims in Class 2 shall be distributed to AC I Toms River Mezz, LLC, the Debtor's 100% Interest Holder.

**Set-offs.**  The Disbursing Agent may, but shall not be required to, set-off against the distributions to be made pursuant to the Plan the claims, obligations, rights, causes of action and liabilities of any nature that the Debtor may hold against the Holder of an Allowed Claim, *provided, however,* that neither the failure to effect such a set-off nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtor (or the Disbursing Agent) of any such claims, obligations, rights, causes of action and liabilities that the Debtor or the Disbursing Agent has or may have against such Holder.  To the extent the Disbursing Agent elects to effectuate a set-off, the Disbursing Agent shall notify the Holder of the Allowed Claim in writing at least ten (10) days prior to effectuating the set-off.  To the extent the Holder of an Allowed Claim objects to the set-off, a written objection shall be provided to the Disbursing Agent no later than three (3) days prior to the set-off date or the objection shall be waived.

## COMPLIANCE WITH TAX REQUIREMENTS

In connection with the Plan, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements provided, however, that the transfer of any Cash, property or other interest under the Plan shall

not be subject to any federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code and/or N.J.S.A. 46:15-10.

## EFFECTIVE DATE

The Effective Date of the Plan shall be the first business day after the Closing Date.

## CONDITIONS TO THE EFFECTIVE DATE

The Plan shall not become effective unless and until it has been confirmed and the following conditions have been satisfied or waived in full:

(a)    The Confirmation Order shall have been entered in this case and no stay or injunction shall be in effect precluding the consummation of the transactions contemplated by this Plan and the Confirmation Order shall not have been modified or vacated on appeal; and

(b)    the Closing has occurred.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the Closing, all Executory Contracts and Unexpired Leases to which Debtor is a party and which are set forth on the relevant schedule to the governing APA, shall be assumed by the Debtor and assigned to the Successful Purchaser in accordance with Section 365 of the Bankruptcy Code and any applicable sale approval order or the Confirmation Order.  The management agreement with Armstrong Management Company as manager for the Property agreement shall be rejected as of the Effective Date.

**Rejection Claims.** Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as Unsecured Claims.

A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Disbursing Agent not later than 30 days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the Effective Date.  Any such Proof of Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor, its successors or their respective properties.

## IMPLEMENTATION OF THE PLAN

**Implementation.**    The Plan shall be implemented by the sale of the Property followed by distribution of the Sale Proceeds.  The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, directing the Debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of equity of the Debtor or the Property of the Debtor as required by the Plan and to perform any act, including the satisfaction of any lien, that is necessary for the consummation of the Plan.

**Plan Funding.**   Funding for the Plan shall be from the sale proceeds and the application of funds held in the Receiver's accounts.

**Vesting of Assets.**   Except as otherwise provided in the Plan, upon the Closing, the Property and any other purchased assets as set forth in the APA shall vest in the Successful Purchaser free and clear of all pledges, Liens, security interests, encumbrances, Claims, charges, options and interests in accordance with sections 363(f), 365 and/or 1123 and 1129 of the Bankruptcy Code, which pledges, Liens, security interests, encumbrances, Claims, charges, options and interests will attach to the Sale Proceeds with the same validity, priority, force and effect and subject to the same defenses as existed prior to the Petition Date.  On the Closing Date, any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.  Any remaining property of the Estate shall re-vest in the Post-Effective Date Debtor who may operate, buy, use, acquire, and dispose of the property of the Estate and may settle and compromise any claims, interests and causes of action in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules with any such proceeds to be distributed consistent with and in accordance with this Plan.

**Execution of Documents.**  (a) Upon entry of the Confirmation Order, the Debtor, and any necessary party thereto, shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.

(b)    Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor shall be authorized to execute, in the name of any necessary party any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance (including, any Lien, Claim or encumbrance that is to be released and satisfied upon the Debtor's compliance with the provisions of article 4 of the Plan) not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

**Filing of Documents.**   Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

**Distributions**.  Except as set forth elsewhere in the Plan, and except for payments to be made at the Closing, all payments required to be made under the Plan shall be made by the Disbursing Agent for disbursement in accordance with the terms of the Plan.

**Preservation of Rights of Action.**  Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Debtor shall retain, and in accordance with its determination of the best interest of the estate, may enforce any claims, rights and causes of action (i) arising under sections 510 and 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date, or the Debtor's Estate, and arising under any provision of state or federal law, or any theory of statutory or common law or equity.

Debtor believes that the Plan will result in a substantial distribution, and potentially a 100% distribution to Allowed Claims.  As such, Debtor does not presently anticipate pursuing any claims, rights and causes of action (i) arising under sections 510 and 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date, or the Debtor's Estate, and arising under any provision of state or federal law, or any theory of statutory or common law or equity and has determined not to pursue any such claims prior to the conclusion of the sale of the Property[9].

Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition Date documents, agreements or claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Debtor of the existence, validity, allowance, or amount of any such claim, document or agreement.  The Debtor expressly reserves the right to challenge the existence, validity, allowance, or amount of any such claim, document or agreement.

**Transfer Taxes.** In furtherance of the Plan and pursuant to N.J.S.A. 46:15-10 and section 1146(a) of the Bankruptcy Code, as applicable, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan, (including any instrument executed in furtherance of the transactions contemplated by the Plan), shall be exempt and shall not be subject to tax under any law imposing a stamp tax, real estate Transfer Tax, mortgage recording tax or similar tax, in connection with or in furtherance of the Plan and the funding requirements contained herein, and to the extent provided by N.J.S.A. 46:15-10  and Section 1146(a), if any, shall not be subject to any state, local or federal law imposing such tax.

**Post Confirmation Management/Post Effective Date Debtor.**  The Debtor shall continue in existence as the Post Effective Date Debtor whose activities shall be limited to matters related to the implementation of the Plan and matters reasonably incidental thereto.  The Post Effective Date Debtor will have all of the rights, powers and duties necessary to carry out its responsibilities under the Plan and shall continue to be managed by GC Realty Advisors LLC

---

9 Debtor reserves all rights to pursue all such causes of action.

until its dissolution.  A four person management committee consisting of Benjamin Ringel, Tibor Klein, Chana Ringel and Michael Krull will be established after the Effective Date to assist in the management of the Post Effective Date Debtor.  GC Realty Advisors LLC by David Goldwasser shall have the authority to break any deadlock between the four members of the management committee.  As soon as practicable after the Closing, the Post Effective Date Debtor shall take all necessary steps to effectuate its dissolution in accordance with applicable law.

Subject to the Receiver making payment of all outstanding obligations of the Property through the Effective Date, and accounting for all payments made to RCG and all amounts held in CBRE accounts, CBRE shall be discharged as of the Effective Date and shall turnover all operational documents to the Successful Purchaser of the Property.

After entry of the Confirmation Order, all references in the Plan and Disclosure Statement to the "Debtor" shall be to the Post Effective Date Debtor.

## MISCELLANEOUS PROVISIONS

### MODIFICATION AND REVOCATION OF THE PLAN

The Plan may be altered, amended or modified by the Debtor, at any time before the substantial consummation of the Plan, as provided in sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  Section 1127 of the Bankruptcy Code authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain technical requirements of sections 1122 and 1123 of the Bankruptcy Code with respect to the classification of Claims and Interests and the contents of a plan.  Prior to Confirmation, if a proponent files modifications to a plan, pursuant to section 1127(a) "the plan as modified becomes the plan."  No order of the Court is required to modify the Plan under the terms of section 1127(a); however, the proponent of a modification to a plan must comply with section 1125 of the Bankruptcy Code with respect to the plan as modified.  In other words, if a modification materially alters the treatment of any Creditor who has accepted the Plan, the Debtor will be required to make additional disclosures to those Creditors whose treatment has been materially and adversely altered and give such Creditors an opportunity to change their votes.

The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order.  If the Debtor revokes or withdraws the Plan, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against or any interest in, the Debtor; or (ii) prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor or any other party, or its Estate.

### RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the Case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

i)      Insure that the Plan is consummated, and to enter any Order pursuant to section 1142(b) of the Bankruptcy Code, to compel the Debtor, its Interest Holder and any other necessary party, to take such action and execute such documents to effectuate the Plan;

ii)      Consider any modification of the Plan proposed pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019;

iii)      Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Expense, the resolution of any and all objections to the allowance or priority of Claims, and the resolution of any adversary proceeding;

iv)      Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

v)      Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

vi)      Ensure that distributions to Holders of Allowed Claims are accomplished in accordance with the provisions of this Plan;

vii)      Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

viii)      Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Case, including, but not limited to any Order necessary to enforce the provisions of article 7 of the Plan;

ix)      Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

x)      Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

xi)      Remedy any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

xii)      Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

xiii)      Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

xiv)      Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order.

xv)      Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement; and

xvi)      Enter an Order of Final Decree concluding the Case.

## RISK FACTORS

Although the Debtor believes that it will be able to meet all of the obligations that it is undertaking pursuant to the Plan there can be no assurance that future events will not cause the Debtor to default on one or more of its obligations under the Plan or that the Closing will occur.

### CONFIRMATION OF THE PLAN

All distributions to Creditors are contingent on the Plan being confirmed by this Court.  Otherwise, the Debtor is not obligated, in any way, to make the payments required hereunder.

### RISK OF SUBSEQUENT REORGANIZATION OR LIQUIDATION

The Plan provides for the liquidation of the Debtor thereby eliminating the risks associated with the need for further financial reorganization of the Debtor.

## VOTING INSTRUCTIONS

A Creditor who is entitled to vote may accept or reject the Plan by executing and returning to the Balloting Agent (as defined below) the ballot (a "Ballot") that was sent out with this Disclosure Statement.  See "VOTING INSTRUCTIONS -- Who May Vote."  The following instructions govern the time and manner for filing Ballots accepting or rejecting the Plan, withdrawing or revoking a previously filed acceptance or rejection, who may file a Ballot, and procedures for determining the validity or invalidity of any Ballot received by the Balloting Agent.

## DEADLINE FOR RECEIPT OF BALLOTS

The solicitation period for votes accepting or rejecting the Plan will expire at 5:00 p.m., Eastern Standard Time, _____, 2016 (the "Voting Deadline").  A Ballot accepting or rejecting the Plan must be received no later than that date and time or it will not be counted in connection with the Confirmation of the Plan or any modification thereof.

## BALLOTING AGENT

All votes to accept or reject the Plan must be cast by using the Ballot.  Executed Ballots should be returned by _____, 2016 at 5:00 p.m. to:

> Robinson Brog Leinwand Greene Genovese & Gluck P.C.
> 875 Third Avenue
> 9th Floor
> New York, New York 10022
> Attn: Lori A. Schwartz, Esq.

(the "Balloting Agent").  A Creditor entitled to vote who has not received a Ballot, or whose Ballot has been lost, stolen or destroyed, may contact the Balloting Agent at the address indicated above, or call Lori A. Schwartz at (212) 603-6334 to receive a replacement Ballot.

## WHO MAY VOTE - IN GENERAL

Claims in Classes 1 and 2 are impaired under the Plan.  Holders of Claims in Classes 1 and 2 are being solicited and are entitled to vote to accept or reject the Plan.  Interests in Class 3 are either unimpaired and therefore deemed to accept the Plan or are impaired and shall be deemed to reject the Plan.  Therefore, either (a) under Section 1126(f) of the Bankruptcy Code, Holders of such interests are conclusively presumed to accept the Plan, or (b) under Section 1126(g) of the Bankruptcy Code, holders of such interests are deemed to reject the plan.  Accordingly, votes of interest holders will not be solicited.

**Ballots Executed in a Representative or Fiduciary Capacity**.  Ballots executed by executors, administrators, guardians, attorneys-in-fact, officers of corporations or others acting in a fiduciary or representative capacity, must indicate the capacity in which such person executed the Ballot and, unless otherwise determined by the Debtor, must submit proper evidence satisfactory to the Debtor of their authority to so act.

**Voting Multiple Claims**.  A single form of ballot is provided for each Class of Claims.  Any Person who holds Claims in more than one Class is required to vote separately with respect to each Class in which such Person holds Claims.  However, any Person who holds more than one Claim in one particular Class will be deemed to hold only a single Claim in such Class in the aggregate amount of all Allowed Claims in such Class held by such Person.  Thus each Person need complete only one ballot for each Class.

DEFECTS OR IRREGULARITIES

ANY EXECUTED AND TIMELY FILED BALLOT WHICH DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN SHALL BE DEEMED TO BE AN ACCEPTANCE OF THE PLAN.

Where more than one timely and properly completed Ballot is received, the Ballot which bears the latest date will be counted.

The Debtor reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot.  Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the deadline for filing timely Ballots.  Neither the Debtor, the Balloting Agent, nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots, nor will any of them incur any liability for failure to provide such notification.  All questions as to the validity, form, eligibility (including the time of receipt), acceptance and revocation or withdrawal of Ballots will be determined by the Bankruptcy Court, upon motion and upon such notice and hearing as is appropriate under the circumstances.  Unless otherwise directed by the Bankruptcy Court, delivery of Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots as to which any irregularities have not been cured or waived will not be counted toward the acceptance or rejection of the Plan.

REVOCATION OF PREVIOUSLY FILED ACCEPTANCES OR REJECTIONS

Any Creditor who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Balloting Agent at any time prior to the Voting Deadline.

A notice of withdrawal, to be valid, must (i) describe the Claim, as the case may be, if appropriate, represented by such Claim, (ii) be signed by the Creditor in the same manner

as the Ballot was signed and (iii) be received by the Balloting Agent on or before the Voting Deadline. The Debtor reserves the absolute right to contest the validity of any such withdrawals of Ballots.

**ACCEPTANCE AND CONFIRMATION**

**CONFIRMATION**

**CONFIRMATION HEARING**

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. The Confirmation Hearing is scheduled to commence on _____, **2016 at 10:00 a.m.** in the United States Bankruptcy Court, Southern District of New York, 300 Quarropas Street, White Plains, New York. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

Any party in interest may object to Confirmation of the Plan by filing a written objection, setting forth their identity and standing and the facts and authorities upon which any objection is based, in the Office of the Clerk of the Bankruptcy Court, no later than _____, 2016 and by delivering a courtesy copy to the Chambers of the presiding judge. Copies of all objections must also be served upon (i) Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, 9th Fl., New York, New York 10022, Attn.: A. Mitchell Greene, and (ii) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014 so that they are received no later than _____, 2016. Any objection that is not timely filed and served as required will not be considered by this Court at the Confirmation Hearing.

**REQUIREMENTS FOR CONFIRMATION**

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims and Interests in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Bankruptcy Code, (iii) the Debtor has proposed the Plan in good faith, (iv) the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interest" of all Creditors, (vi) the Plan is feasible, and (vii) the Plan has been accepted by the requisite number and amount of Creditors in each Class entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances. The Debtor believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.** The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or retain if the Debtor was to be liquidated under chapter 7 of the Bankruptcy Code.

To determine what the holders in each Impaired Class of Claims or Interests would receive if the Debtor was liquidated under chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in a chapter 7 liquidation case. The amount that would be available for satisfaction of Allowed Claims against the Debtor would consist of the proceeds resulting from the disposition of the Property, with any rents held by the Receiver to be applied to the Allowed RCG Secured Claim. Such amount would be reduced by the amount of any Claim or Claims secured by the Debtor's assets, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may have accrued. Such value is then juxtaposed against the amount creditors are receiving under the Plan to determine if the value each impaired creditor is receiving is the same or more than such creditor would receive from a chapter 7 liquidation on the Confirmation Date.

The costs of liquidation under chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation. Such costs would include the fees payable to a chapter 7 Trustee, as well as those which might be payable to attorneys, appraisers, accountants, brokers and other professionals that such a Trustee may engage to assist in the liquidation. In addition, chapter 7 costs would include any liabilities incurred or assumed pursuant to the transactions necessary to effectuate the liquidation. Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtor during the pendency of the Case in chapter 11.

After satisfying Administrative Claims arising in the course of the chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time the Case was pending under chapter 11, including compensation for attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor or any official committee appointed pursuant to section 1102 of the Bankruptcy Code.

After consideration of the effects that a chapter 7 liquidation would have on the proceeds available for distribution including (i) the increased costs and expenses of a chapter 7 liquidation arising from fees payable to a Trustee in bankruptcy and professional advisors to such Trustee, (ii) the erosion in value of the Property in a chapter 7 case in the context of the expeditious liquidation required under chapter 7 and the "forced sale" atmosphere that would prevail, and (iii) the potential tax consequences that would arise from a sale of the Property in a chapter 7, the Debtor believes that holders of Unsecured Claims would receive substantially less on account of their claims as opposed to the proposed pro rata distribution of the sale proceeds as provided for in the Plan.

**Liquidation Analysis.**  The Debtor has concluded that the Plan provides to each Creditor recovery with a present value at least equal to the present value of the distribution which such person would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. The Plan provides for a sale in the chapter 11 case with such Sale Proceeds to be distributed to creditors in accordance with the priorities established by the Bankruptcy Code, including what the Debtor believes will be at least a pro rata distribution to unsecured creditors, if not a substantial distribution to unsecured creditors.

The Debtor believes that in the event its assets were sold in chapter 7 liquidation, all of the proceeds would go to pay chapter 7 administrative claims, bankruptcy fees, chapter 11 administrative claims, and the Allowed RCG Secured Claim. In such event, no funds would be remaining for distribution to Unsecured Creditors. As such, the Debtor believes that no Creditors or interest holders would receive a distribution in a Chapter 7 case which is greater than the one they may be entitled to under the Plan.

The Debtor further believes that the net effect of a conversion of this case to chapter 7 would be to (i) increase the administrative expenses of the estate and (ii) decrease the funds available for non-administrative creditors.

The liquidation values stated herein assume that the Property would be liquidated in the context of a chapter 7 case and assumes the present values of such liquidation values as of December 1, 2016.  The assumptions utilized in the analysis considered the estimated liquidation value of the Property and estimated amount of Claims that would be allowed, together with an estimate of certain administrative costs and other expenses which would likely result during the liquidation process.   While the Debtor believes the assumptions underlying the Liquidation Analysis are reasonable, the validity of such assumptions may be affected by the occurrence of events, and the existence of conditions not now contemplated or by other factors, many of which will be beyond the control of the Bankruptcy Court, the Debtor and any trustee appointed for the Debtor.  The actual liquidation value of the Debtor may vary from that considered herein and the variations may be material.

The Debtor has assumed that the Property would be sold within six months in a Chapter 7 liquidation.  It is assumed that cash proceeds of liquidating the Property would total approximately $23,000,000, which equates to approximately 85% of the 2013 appraised value of the Property of $27,000,000.  This valuation discount is utilized to take into account the negative impact on values attributed to the Chapter 7 process.

The Debtor believes that the total cash which would be administered in a hypothetical Chapter 7 case would aggregate approximately $23,000,000 in proceeds from the liquidation sale of the Property as RCG holds all of the Debtor's cash pursuant to the ALR and would apply such amounts to its claim.  Upon consultation with its advisors, the Debtor assumes for the purposes of this analysis that the cash would be distributed as follows:

**Available for distribution**                                                                   **$23,000,000**

**To the payment of:**

Chapter 7 Administrative Claims:

| | |
|---|---:|
| Chapter 7 trustee commissions and expenses (approximately 3% of $23,000,000) | $690,000 |
| Chapter 7 trustee broker commissions and expenses (approximately 3% of $23,000,000) | $690,000 |
| Chapter 7 trustee's professionals (attorneys, appraisers, auctioneers accountants, etc.) | $250,000 |

| | |
|---|---:|
| RCG Secured Claim | $22,045,715.03 |
| Chapter 11 Administrative Claims | <u>$250,000</u> |
| Remaining Available Cash[10] | $0 |
| General Unsecured Claims | $0 |

**In a chapter 7 liquidation, there would be insufficient funds to satisfy the RCG Secured Claim in full, Chapter 11 Administrative Claims in full and no funds available to pay claims of Allowed Unsecured Creditors.**

The Plan contemplates a chapter 11 sale which will provide payment to RCG on account of its Allowed Secured Claim as well as a pro rata distribution to unsecured creditors. In a chapter 7 liquidation there would be insufficient funds to satisfy the RCG Secured Claim in full, Chapter 11 Administrative Claims in full and no funds available to pay claims of Allowed Unsecured Creditors. Accordingly, the Debtor believes that the Plan provides Creditors with at least as much as they would be entitled to receive in a chapter 7 liquidation.

**Feasibility.** For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless such liquidation is set forth in the Plan. The Plan calls for the Debtor's liquidation, distribution of the Sale Proceeds and after the Closing the dissolution of the Post Effective Date Debtor.

Based on the Summary of the Plan, the Plan meets the feasibility requirements of the Bankruptcy Code.

---

[10] Analysis does not take into account estimated $1.5 million of tax arising from sale under a chapter 7 which will further diminish the distribution to RCG in a chapter 7 liquidation scenario.

**Confirmation With the Acceptance of Each Impaired Class.** The Plan may be Confirmed if each impaired Class of Claims accepts the Plan.  Classes of Claims which are not impaired are deemed to have accepted the Plan.  A Class is impaired if the legal, equitable or contractual rights attaching to the Claims of that Class are modified other than by curing defaults and reinstating maturities or by payment in full in cash.

Holders of Claims impaired by the Plan are entitled to file Ballots accepting or rejecting the Plan. Holders of Claims not impaired by the Plan, are deemed to accept the Plan, and may not vote to accept or reject the Plan.  Holders of Claims that will neither receive nor retain any property under the Plan are deemed to reject the Plan.

The Bankruptcy Code defines acceptance of a plan by a Class of Claims as acceptance by the holders of two-thirds in dollar amount and a majority in number of Claims of that Class who actually voted.  Only those Claims, the holders of which actually vote to accept or reject the Plan, are counted for the purpose of determining whether the requisite number and amount of acceptances have been received.

**Confirmation Without the Acceptance of Each Impaired Class**.  In the event that any impaired Class of Claims does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Debtor's request if (i) all other requirements of section 1129(a) of the Bankruptcy Code are satisfied, (ii) at least one impaired Class of Claims votes to accept the Plan without regard to any vote cast on account of a Claim held by "insiders" (as defined in the Bankruptcy Code) and (iii) as to each impaired Class which has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-accepting Class.   The Debtor believes that the Plan is in the best interest of all Creditors and strongly recommends that all parties entitled to vote cast their ballots in favor of accepting the Plan.  Nevertheless, out of an excess of caution, pursuant to the Plan, the Debtor has requested that the Court confirm the Plan over the rejection of any non-accepting class in the event all other elements of section 1129(a) are satisfied.

A plan "does not discriminate unfairly" if the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are intertwined with those of the non-accepting class, and no class receives payments in excess of that which it is legally entitled to receive for its Claims.  The Debtor believes that under the Plan all classes of Impaired Claims are treated in a manner that is consistent with the treatment of other classes of Claims with which their legal rights are intertwined, if any, and no class of Claims will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims in such class.  Accordingly, the Debtor believes the Plan does not discriminate unfairly as to any impaired class of Claims.

Whether the Plan is fair and equitable depends upon the application of the so-called "absolute priority rule."  Subject to certain exceptions, this rule, codified in section 1129(b)(2) of the Bankruptcy Code, generally requires that an impaired Class of Claims that has

not accepted the Plan must be paid in full if a more junior class receives any distribution under the Plan.

With respect to Secured Claims, the absolute priority rule allows the confirmation of a Plan over the rejection of a class of Secured Claims if the holders of such Claims retain their liens and each holder of a Claim of such class receives on account of such Claim deferred cash payments, totaling at least the allowed amount of such Claim, of a value, as of the Effective Date of the plan, of at least the value of such holder's interest in the property securing its Claim. The Debtor's impaired Secured Creditor, RCG, will be paid from the Sale Proceeds at least the value of its interest in the Property securing its claim.

With respect to Unsecured Claims, the absolute priority rule allows the confirmation of a Plan over the rejection of a class of Unsecured Claims if the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim or interest any property.

In this case, no payments will be made to the Debtor's interest holder, unless all Allowed unsecured claims are paid in full. Moreover, after the Closing, all interests in the Debtor shall be canceled.

With respect to the Allowed Interests, Section 1129(b)(2)(C) requires that the holder of such interest receive any fixed liquidation preference, fixed redemption price or value of such interest, or that no junior interest will receive or retain any property on account of such junior interest. To the best of Debtor's knowledge, Interest Holders are not entitled to any fixed liquidation preference or redemption price and no junior interests are receiving or retaining any property under the Plan. Accordingly, the Plan complies with section 1129(b)(2)(C) of the Bankruptcy Code.

If the Plan is rejected by only one class of impaired creditors, the Debtor requests that the Plan be confirmed under section 1129(b).

## EFFECT OF CONFIRMATION

### INJUNCTION

**Except (i) as otherwise provided under Final Order entered by the Bankruptcy Court or (ii) with respect to the Debtor's obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any Claim held against the Debtor as of the date of entry of the Confirmation Order (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Debtor, from the Property, or from property of the Estate that has been or is to be distributed under the Plan, and (ii) the creation, perfection or enforcement of any lien or encumbrance against the Property and**

any property of the Estate that has been or is to be, distributed under the Plan.  Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act to collect, recover or offset from the Debtor, from the Property, or from property of the Estate, any claim, any obligation or debt that was held against the Debtor by any person or entity as of the Confirmation Date except pursuant to the terms of the Plan. The entry of the Confirmation Order shall permanently enjoin all Creditors, their successors and assigns, from enforcing or seeking to enforce any such Claims.

RELEASE

Except as otherwise provided in the Plan, upon the Effective Date, in consideration of the Cash and other property to be distributed to or on behalf of the holders of Claims and Interests under the Plan, the Plan shall be deemed to resolve all disputes and constitute a settlement and release, between and among the Debtor, on the one hand, and each Creditor and Interest Holder, on the other, from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the Debtor, its Creditors or Interest Holder ever had or now have through the Effective Date in connection with their Claim or Interest (including, without limitation, any claims the Debtor may assert on its own behalf or on behalf of Creditors or Interest Holders pursuant to sections 510 and 542 through 553 of the Bankruptcy Code, any claims Creditors or Interest Holders may have asserted derivatively on behalf of the Debtor absent bankruptcy, any claims based on the conduct of the Debtor's business affairs prior or subsequent to the commencement of the Case or any claims based on the negotiation, submission and confirmation of the Plan), provided however that nothing in the Plan or the Confirmation Order shall effect a release of any claim for any debt owed to the United States Government arising under the Internal Revenue Code; any state, city or municipality arising under any state, city or municipal tax code;  any environmental laws or any criminal laws of the United States or any state, city or municipality.  Nothing in the Confirmation Order or the Plan shall enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties for any claim, suit or action arising under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal laws of the United States or any state, city or municipality.  Nothing in the Confirmation Order or the Plan shall exculpate any party from any liability to the United States Government or any of its agencies or any state, city or municipality arising under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal laws of the United States or any state.

Notwithstanding anything to the contrary in this release provision or any confirmation order, RCG's claims against any non-debtor obligor under or in connection with the Mortgage Loan or the Mezzanine Loan, including any guarantors, are not released or waived, and are preserved.

LIMITATION OF LIABILITY

**To the extent provided in 11 U.S.C. § 1125(e), neither the Debtor, the Interest Holders nor any of their respective officers, directors, members, general partner, managers or employees (acting in such capacity), nor any professional person employed by any of them (the "Released Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with this case or the Plan except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing contained herein shall limit the liability of the Debtor's professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct.  From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released pursuant to Article 8 of the Plan.**

ALTERNATIVES TO THE PLAN

If the Plan is not confirmed by the Bankruptcy Court, the alternatives may include (a) liquidation of the Debtor under chapter 7 of the Bankruptcy Code; (b) the formulation, promulgation and confirmation of an alternative plan of reorganization premised upon exit financing; or (c) dismissal of the Debtor's case.  In the case of dismissal, RCG would be allowed to proceed with a foreclosure sale and seek to take ownership of the Property.

The Debtor believes that the Plan provides a recovery to all Creditors equal to or greater than would be obtainable in a chapter 7 liquidation.

The Debtor believes that the Plan enables Creditors to realize the most value under the circumstances.

CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Claim. Each holder of an Allowed Claim is urged to consult his own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possible arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Allowed Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

The Debtor has not requested any ruling from the Internal Revenue Service or any other taxing authority with respect to such matters nor will the Debtor, with respect to the federal income tax consequences of the Plan, obtain any opinion of counsel.  Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS. The Debtor offers no statements or opinions that are to be relied upon by the creditors as to the treatment of creditors' claims under the Plan.  Matters not discussed in this Disclosure Statement may affect the tax consequences of the Plan on any particular holder of a Claim or Equity Interest

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

The tax consequences to Creditor and Interest Holders will differ and will depend on factors specific to each Creditor and Interest Holder, including but not limited to: (i) whether the Claim or Interest (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Claim or Interest; (iii) the type of consideration received by the Creditor and Interest Holder in exchange for the Claim; (iv) whether the Creditor and Interest Holder is a United States person or foreign person for tax purposes; (v) whether the Creditor and Interest Holder reports income on the accrual or cash basis method; (vi) whether the Creditor and Interest Holder has taken a bad debt deduction or otherwise recognized loss with respect to a Claim.

**THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH CREDITOR AND INTEREST HOLDER. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE IT IS IMPORTANT THAT EACH CREDITOR AND INTEREST HOLDER OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR AND INTEREST HOLDER AS A RESULT OF THE PLAN.**

**THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY CREDITOR AND INTEREST HOLDER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH CREDITOR AND INTEREST HOLDER SHOULD SEEK ADVICE BASED UPON THE CREDITOR AND INTEREST HOLDER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

### ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement, the Ballots and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to (i) the Debtor's counsel, Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, 9th Fl., New York, New York 10022, Attn.: A. Mitchell Greene (212) 603-6399.

Copies of all pleadings, orders, lists, schedules, proofs of claims or other documents submitted in these cases are on file in the Office of the Clerk of the United States Bankruptcy Court at 300 Quarropas Street, White Plains, New York, and are available for public inspection Monday through Friday, between the hours of 9:00 a.m. and 4:00 p.m. and are also available for viewing on the Internet at http://www.nysb.uscourts.gov.

CONCLUSION

The Debtor believes the Plan is in the best interests of all Creditors and should be confirmed.

**Dated:**   New York, New York
               November 15, 2016

AC I TOMS RIVER LLC
By its Manager, GC Realty Advisors LLC

By: /s/ David Goldwasser
David Goldwasser,
Managing Member of GC Realty Advisors LLC

ROBINSON BROG LEINWAND
GREENE GENOVESE & GLUCK P.C.
Attorneys for the Debtor
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.:  (212) 603-6300

By: /s/ A. Mitchell Greene
A. Mitchell Greene