STROOCK & STROOCK & LAVAN LLP
Kevin L. Smith
Harold A. Olsen
180 Maiden Lane
New York, New York 10038-4982
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*Counsel to RCG LV Debt IV Non-REIT Assets Holdings, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                          :          Chapter 11
                                                :
                                                :
AC I TOMS RIVER LLC,                            :          Case No. 16-22023 (RDD)
                                                :
                                                :
                               Debtor.          :
                                                :
-------------------------------------------------------------x

## REPLY IN FURTHER SUPPORT OF MOTION OF RCG LV DEBT IV NON-REIT ASSETS HOLDINGS, LLC PURSUANT TO 11 U.S.C. §§ 105(a), 502 AND 506(a) AND RULES 3001(f) AND 3012 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE TO DETERMINE VALUE OF SECURED CLAIM

RCG LV Debt IV Non-REIT Assets Holdings, LLC ("RCG") hereby files its Reply

(the "Reply") in further support of its *Motion Pursuant to 11 U.S.C. §§105(a), 502(a) and*

*506(a) and Rules 3001(f) a n d  3012 of the Federal Rules of Bankruptcy Procedure to*

*Determine Value of Secured Claim* (the "Motion") [Docket No. 76].[1] RCG respectfully states

as follows:

---
[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

## PRELIMINARY STATEMENT

Debtor's objection to the Motion (the "<u>Objection</u>") [Docket No. 91] argues—largely without citation to any relevant legal authority—that certain elements of RCG's claim are excessive or constitute a penalty or violation of public policy. Debtor's bald legal assertions are simply wrong. Debtor also attempts to manufacture ambiguities surrounding RCG's claim, and seeks an accounting. This is a blatant attempt to relitigate issues that Debtor has already lost in state court, and which the Debtor is precluded from raising. As demonstrated below, there are no ambiguities, and there is no need for an accounting. RCG's calculation of its claim, including accrual of default interest, is reasonable and fully consistent with the Mortgage Loan documents and applicable law. While Debtor expresses a desire to step back in time and reinstate the mortgage loan as of the declaration of default in early 2012, there is no authority to do so under the Bankruptcy Code. In fact, the original maturity date of the Mortgage Loan occurred on July 5, 2016, and it is now impossible for Debtor to seek to reinstate RCG's claim. If Debtor had wished to avail itself of the protections of the Bankruptcy Code in 2012, it should have sought bankruptcy protection at that time. Instead, Debtor chose to litigate for years in state court, and only when it was time to finally face the music at the state court foreclosure hearing did it commence this Case.

This Case is essentially a two-party dispute—the legitimate trade creditors are few, generally only have claims because Debtor's filing interrupted their payment in the ordinary course, and should ultimately be paid in full in this Case. Debtor's unfounded arguments regarding penalties and violations of public policy are really being asserted on behalf of the equity, whose recovery would be subject to the prior payment of RCG's claims, even if such claims constituted penalties, in a chapter 7 liquidation. Debtor invokes equity to reduce

RCG's claim, and while there is nothing inequitable about RCG's claim, Debtor's effort also fails because there is no equitable "catch all" provision to supplement the specific grounds for disallowance in Section 502 of the Bankruptcy Code. While Debtor improperly argues for disallowance on equitable grounds, it is worth noting that even under the severe remedy of equitable subordination, claims can only be subordinated to claims of other creditors, and may not be subordinated to equity.

The ultimate allowable amount of RCG's claim in this Case will change, as legal fees and interest are continuing to accrue. Further, the auction sale of the Property subject to this Court's approval will determine its value, and therefore whether RCG is entitled to postpetition interest as part of its allowed bankruptcy claim. In order to preserve and facilitate RCG's exercise of its credit bidding rights under the Bankruptcy Code, RCG requests that this Court allow RCG to credit bid in an amount up to $23,355,389.71 (the amount RCG is owed as of December 31, 2016) solely for the purposes of credit bidding at the auction sale of the Property, and schedule a further hearing after the auction sale on the ultimate allowance of RCG's claim for distribution purposes.

## ARGUMENT

### Debtor Is Bound by the Foreclosure Order

1.    Debtor is bound by the Foreclosure Order, which was entered prior to the bankruptcy filing. Debtor argues the Foreclosure Order is invalid because its counsel did not consent to its form prior to entry. As set forth in the Campbell Affidavit annexed to the Motion, this is not a requirement for a valid order under New Jersey practice. See Motion, Ex. 5. Debtor's own exhibit makes this clear. When Debtor's counsel appeared again before the New Jersey

Court after the Foreclosure Order was signed, he made the identical argument that the

Foreclosure Order was invalid because he had not consented to the form of order before it was

submitted to the Court.  The Judge's response was clear: "***I don't require consent.***  It's just a

normal practice that both parties—I signed the order.  ***The order is valid.***"  See Objection, Ex.

B, Supplemental Transcript at 3, lines 2-4 (emphasis added).  Notably, the Certification

appended to this Supplemental Transcript indicates that it was recorded from 11:39 to 11:41

a.m. on January 8, 2016, whereas Debtor's bankruptcy petition was filed at 11:50 a.m. on

January 8, 2016.  Compare id. at 4, line 9, with Petition [Docket No. 1].  Thus, Debtor's own

exhibit demonstrates that the Foreclosure Order was signed by the New Jersey Court, and

determined by that court to be a valid order, prior to Debtor's bankruptcy filing.

2.      An examination of the Foreclosure Order, the transcript of the January 8 Hearing and

the parties' state court submissions demonstrates that much of Debtor's Objection is an

attempt to get a "second bite of the apple" and reargue positions it has already litigated and

lost in state court.  Debtor's counsel, in opposition to the entry of a judgment of foreclosure,

argued that: (i) an accounting was required; (ii) RCG improperly failed to timely apply funds

in the account, leading to excessive default interest and late charges; (iii) RCG was not

entitled to the Payment After Default amount; and (iv) RCG's legal fees were excessive.  See

Motion, Ex. 4, Transcript at 3-32.  These are the very same allegations Debtor makes in its

Objection before this Court, and each was rejected by the New Jersey Court.  See Motion, Ex.

4, Transcript at 36, line 6 through 42, line 13.  The New Jersey Court refused to order an

accounting, and instead found that RCG's judgment calculations were correct and supported

with requisite proofs, and that RCG had provided all necessary credits, receipts, monthly

management reports and other back up documentation.  See id. at 40, line 22 through 41, line

4

7.  The New Jersey Court further found that RCG's actions with respect to funds held in the accounts were reasonable and in compliance with the Mortgage Loan Agreement.  See id. at 41, lines 8-15.  The New Jersey Court also overruled Debtor's objection to the Payment After Default amount, stating: "I read the agreement as requiring the 5 percent on the default.  To do otherwise would give a benefit to the defaulting defendant in foreclosure that would not be available to someone who pre-paid it.  That doesn't make sense, and I'm satisfied that that was not the intent of the parties in the drafted documents." Id. at 42, lines 4-10.

3.      Thus, all of Debtor's arguments regarding prepetition interest, late fees, the timing of application of lockbox funds, the Payment on Default Premium and the need for an accounting have already been litigated and lost, resulting in the Foreclosure Order.  The New Jersey Court ruled on the record and entered the Foreclosure Order prior to Debtor's filing for bankruptcy, and the principle of issue preclusion bars relitigation of these issues.  See Winters v. N. Hudson Regional Fire & Rescue, 50 A.3d 649, 659 (N.J. 2012) (issue preclusion applies where: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding).

4.      Each of these elements is satisfied here.  In the prior proceeding (i.e., the Foreclosure Action):  (1) Debtor raised the same factual and legal objections to each of the categories of monies owed on the Mortgage Loan; (2) the New Jersey Court heard argument on each of Debtor's objections and rejected them all; (3) the New Jersey Court issued a final judgment

on the merits on these issues in the form of the Foreclosure Order; (4) the New Jersey Court's

determination to reject each of Debtor's objections was essential to the final judgment as the

Foreclosure Order included the amounts of each of the challenged categories;[2] and (5) Debtor

is the same party against whom the Foreclosure Order was entered.  The Foreclosure Order is

valid, and must be accorded full faith and credit in this Court.  See 28 U.S.C. § 1738; Migra v.

Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 80-81 (1984); Howard v. N.J. Div. of

Youth & Family Servs., No. 08 Civ. 4934, 2015 WL 5089536, at *5 (D.N.J. Aug. 27, 2015)

("28 U.S.C. § 1738 requires federal courts to give the same preclusive effect to a prior state

court decision as the court in the state where the decision was rendered."); see also, e.g.,

Piccolo v. Dime Sav. Bank of N.Y., 145 B.R. 753, 759 (N.D.N.Y. 1992) (setting aside

bankruptcy court's reversal of validly obtained state foreclosure sale because the state

foreclosure proceeding was entitled to full faith and credit under 28 U.S.C. § 1738, and

bankruptcy court could not invoke its equitable powers to circumvent the state court

proceeding).

5.      Debtor also argues that the Foreclosure Order is not binding because the bankruptcy

filing tolled its time to move for reconsideration or to appeal.  Debtor does not cite to any

authority for this proposition, but the extension of a debtor's time to file a motion for

reconsideration or file a notice of appeal is generally governed by Section 108(b).[3]  See Local

Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Custom Air Sys., Inc., 333 F.3d

---

[2] The New Jersey Court did not include a specific legal fee amount in the Foreclosure Order.  However, as to a
portion of the legal fees comprising RCG's claim, the New Jersey Court entered a prior order in October 2015
which is entitled to similar preclusive effect.  See Motion, Ex. 8.

[3] Absent wrongdoing by the non-debtor party (which is not present here), the sixty day period under Section
108(b) may not be extended by the Court.  See Geron v. Valeray Realty Co., Inc. (In re Hudson Transfer Group,
Inc.), 245 B.R. 456, 459-60 (Bankr. S.D.N.Y. 2000); accord In re 210 Roebling, LLC, 336 B.R. 172 (Bankr.
E.D.N.Y. 2005).

6

345, 347-48 (2d Cir. 2003) (time for debtor in possession to file notice of appeal is governed

by section 108(b)); In re Bianchi Indus. Servs., LLC, No. 11-31035, 2012 WL 601889, at *5-6

(Bankr. N.D.N.Y. Feb. 23, 2012) (debtor's time to appeal state court default judgment expired

once the 60-day extension allowed under section 108(b) passed).

6.      Even if an appeal or reconsideration were still possible at this late date, Debtor is not

seeking to pursue either avenue.  Rather, it is suggesting such a possibility only to attempt to

justify its improper collateral attack on the Foreclosure Order.  Further, Debtor provides no

grounds—because there are none—that would support a motion for reconsideration.  As

Debtor acknowledges, "[a] litigant should not seek reconsideration merely because of

dissatisfaction with a decision of the Court."  D'Atria v. D'Atria, 576 A.2d 957, 961 (N.J.

Super. Ct. Ch. Div. 1990); Cummings v. Bahr, 685 A.2d 60, 65 (N.J. Super. Ct. App. Div.

1996).  Debtor does not even attempt to identify any "palpably incorrect or irrational basis"

upon which the Foreclosure Order was based, or any evidence that the court overlooked or

any new evidence that the court did not have an opportunity to consider, which are the only

permissible grounds for seeking reconsideration under New Jersey law.  Cummings, 685 A.2d

at 65.  Accordingly, any motion for reconsideration would be meritless.

**Debtor Is Not Entitled to an Accounting**

7.     Debtor does not cite any legal support for its request for an accounting; instead,

Debtor resorts to manufacturing ambiguities.  In reality, there are no ambiguities, and no

accounting is required or appropriate.

8.     First, the mere fact that the Receiver refers superficially to funds swept by RCG as

"Mortgage Principal" in the monthly receiver reports is irrelevant.  RCG has sole discretion in

how such funds are applied, see Motion, Ex. 1, Mortgage Loan Agreement, §3.21, and in fact

RCG applied such funds as reflected on Exhibit 6 to the Motion.[4]  The Receiver also

incorrectly characterized as payments of "Mortgage Principal" certain funds that reimbursed

RCG for its payment of property taxes on the Property.  There is no ambiguity here, and the

Receiver's mischaracterization of the facts over which it had no knowledge or control does

not create one.

9.     Second, Debtor attaches bank statements[5] and questions certain wire transfers to RCG

at a time when RCG's records show no application of funds to the Mortgage Loan balance.

See Objection, ¶32.  There is no disconnect or ambiguity here.  For example, the quarterly

wire transfers to RCG between January and December 2012 were reimbursement to RCG for

property taxes on the Property that were paid by RCG (including to satisfy tax liens that arose

due to the Debtor's failure to pay taxes when due), and therefore are not reflected on RCG's

spreadsheet as being applied to the Mortgage Loan balances.  Attached hereto as Exhibit A is

---

[4] An updated summary is attached hereto as Exhibit C.

[5] RCG has provided Debtor with legible copies of the bank statements for the period January-August 2013 per
Debtor's request in footnote 2 of the Objection.

a lockbox reconciliation showing the flow of funds into and out of the lockbox account and their application to the Debt, taxes and insurance, operating expenses and other expenses.[6]

**RCG's Conduct in Applying the Lockbox Funds Was Reasonable and Entirely Consistent with the Mortgage Loan Agreement and Its Rights Under Applicable Law**

10.    RCG's explanation for why it did not regularly sweep the accounts for a discrete period of time is set forth in the Reply Certification of Dean Ravosa filed with the New Jersey Court and quoted by Debtor in paragraph 31 of the Objection.  Annexed hereto is an additional Declaration of Dean Ravosa in further support of the Motion and this Reply ("Ravosa Decl.").  As noted above, the New Jersey Court has already found that RCG's conduct with respect to the funds in the account was reasonable and in compliance with the Mortgage Loan Agreement.

11.    Section 3.21 of the Mortgage Loan Agreement provides in part that, following an Event of Default and notwithstanding anything to the contrary in the Mortgage Loan Agreement or the Security Instrument, "Lender may apply the amounts of such Accounts ***as Lender determines in its sole discretion*** including, but not limited to, payment of the Debt." Proof of Claim, Ex. A § 3.21 (emphasis added).  In New York, when a party bargains for unfettered discretion under the terms of a commercial contract between sophisticated parties, a court may not impose any limitations on the exercise of that discretion.  In <u>Moran v. Erk</u>, the New York Court of Appeals held that the implied covenant of good faith and fair dealing may not be relied upon to read a "bad faith exception" into an attorney approval clause that did not

---

[6] The shaded area at the top of the lockbox reconciliation reflects the period when the Debtor was in control of the lockbox account.

otherwise limit the attorney's discretion.  11 N.Y.3d 452, 456-59 (2008) ("We do not

ordinarily read implied limitations into unambiguously worded contractual provisions

designed to protect contracting parties.").  Courts have interpreted <u>Moran</u> broadly in holding

that "'a court may not limit contractual discretion where limitations are not supported by the

express contractual language.'"  <u>Overseas Private Inv. Corp. v. Gerwe</u>, No. 12 Civ. 5833,

2016 WL 1259564, at *7 (S.D.N.Y. Mar. 28, 2016) (quoting <u>In Touch Concepts, Inc. v.

Cellco P'ship</u>, 949 F. Supp. 2d 447, 472 (S.D.N.Y. 2013), <u>aff'd</u>, 788 F.3d 98 (2d Cir. 2015));

<u>see also</u> <u>The Cookware Co. (USA), LLC v. Austin</u>, No. 15 Civ. 5796, 2016 WL 7378762, at

*8 (S.D.N.Y. Dec. 8, 2016) ("[B]ecause the parties explicitly bargained to give GreenPan

discretion to set prices, Hudson cannot now bootstrap an implied covenant of good faith and

fair dealing into these provisions to negate that discretion."); <u>Paxi, LLC v. Shiseido Ams.

Corp.</u>, 636 F. Supp. 2d 275, 286 (S.D.N.Y. 2009) ("Following [<u>Moran's</u>] logic, the obligation

of good faith and fair dealing does not negate [an] expressly bargained-for clause that allows a

party to exercise its discretion, unless that clause imposes a limit on the discretion to be

exercised or explicitly states that the duty of good faith and fair dealing applies."); <u>ELBT

Realty, LLC v. Mineola Garden City Co.</u>, 144 A.D.3d 1083, 1084 (N.Y. App. Div. 2016)

(refusing to limit purchaser's bargained-for discretion and holding that purchaser properly

terminated commercial contract for sale between sophisticated parties when the contract

provided purchaser with "sole discretion" to terminate, a decision that "was the purchaser's

alone and did not need to be accompanied by any specific justification").  Accordingly, RCG

acted well within its rights under the Mortgage Loan Agreement and New York law in

exercising its sole discretion as to how to apply funds in the Account following Debtor's

default.

12.     Moreover, RCG's conduct was neither arbitrary, unreasonable nor inequitable,[7] and Debtor has presented no evidence of any bad faith on the part of RCG.  Here, given the circumstances, including the possibility of a consensual restructuring and the need to keep adequate funds in the account to fund operations during this process, RCG's conduct was fully consistent with the Mortgage Loan Agreement and New York law.  See Citibank, N.A. v. United Subcontractors, Inc., 581 F. Supp. 2d 640, 646 (S.D.N.Y. 2008) ("A party to a contract is allowed to act in its own self-interest consistent with its rights under the contract.").  Once it became clear that a consensual restructuring was unlikely to occur, and as Debtor had not responded to any of RCG's offers to make funds available therein to pay the approved monthly operating expenses of the Property, RCG applied funds that had accumulated to date to the Debt.  Ravosa Decl. ¶5.  During subsequent monthly periods after Debtor began to again deposit rents into the deposit account established for the Property under the Mortgage Loan Agreement at the New Jersey Court's direction, while there were certain short periods when monthly applications of funds to the Debt were not made, these generally corresponded to times when the Debtor was failing to make regular requisitions for funds to pay operating expenses or, even when it did so, was failing to provide correct and adequate supporting documentation, such as vendor invoices, necessary to process such requests. Id. ¶6.  Under these circumstances, RCG determined that the prudent course of action was to leave what limited funds were in the account in place, to cover any operational shortfalls or unforeseen contingencies.  Id.  ¶7.  In short, RCG's determination as to how to apply the

---

[7]  Debtor stresses that the Lockbox Bank "shall" withdraw and disburse funds in the Lockbox account.  See Objection, ¶14.  This is an obligation of the Lockbox Bank, not RCG, and merely confirms how funds are distributed to the other accounts following a Triggering Event (including an Even of Default).  Once the funds are distributed by the Lockbox Bank, RCG has the right, not the obligation, to withdraw funds from the Debt Service Account to pay the Monthly Debt Service Payment Amount, as well as any late payment charges or default interest.  Mortgage Loan Agreement, §3.11.  Further, following an Event of Default, each of these provisions in Article 3 is superseded by Section 3.21.

funds was not arbitrary or capricious, and Debtor has not identified any grounds to suggest otherwise.

### RCG's Calculation of Default Interest Is Appropriate, and Default Interest Is Not a Penalty or Violation of Public Policy

13.    As set forth in the Motion, a default interest rate 5% over the non-default rate is not a penalty under New York law.  See Motion at ¶¶36, 40.[8]  The Mortgage Loan Agreement was the result of arm's length negotiation between sophisticated parties, and RCG's method of calculating default interest accrual is consistent with the Mortgage Loan Agreement (and was found to be appropriate by the New Jersey Court).

14.    Default interest is additional interest agreed to be due after a default.  See Jamaica Sav. Bank, FSB v. Ascot Owners, Inc., 245 A.D.2d 20, 20 (N.Y. App. Div. 1997) ("It is well settled that an agreement to pay interest at a higher rate in the event of default or maturity is an agreement to pay interest and not a penalty."); In re 785 Partners LLC, 470 B.R. 126, 135 (Bankr. S.D.N.Y. 2012) ("The Debtor . . . analogizes the Default Rate to liquidated damages, and argues that it is so disproportionate to the damages suffered . . . that it should be deemed an unenforceable penalty.  The Debtor has not identified any authority that applies a liquidated damages analysis to a default interest clause in a loan negotiated by sophisticated parties.").  But regardless of how Debtor characterizes the Default Rate, indisputably it is not a penalty and is clearly authorized under New York law.  See, e.g., Ruskin v. Griffiths, 269 F.2d 827, 832 (2d Cir. 1959) ("A variable interest provision in event of a stated default . . . is

---

[8] The reasonableness of RCG's 11.294% default rate on the Mortgage Loan is highlighted by the fact that Debtor, in prosecuting its now-abandoned cramdown plan, was only able to locate funding from an insider, in an amount less than what it originally sought, and at *twenty percent interest*.  See Docket No. 62.

not a penalty, nor should it be considered unconscionable."), cert. denied, 361 U.S. 947

(1960); In re 785 Partners LLC, 470 B.R. at 135 ("[U]nder New York law, a variable interest

rate that increases following a default is not a penalty.") (holding that even under a liquidated

damages analysis, a default rate of 5% interest above the base rate was not an unenforceable

penalty).

15.     Debtor further compounds the erroneous legal propositions stated in its Objection by

conflating prepetition and postpetition default interest.  See Objection, ¶¶33-34.  There is no

overriding reasonableness requirement or equitable limit for allowance of prepetition interest,

which is governed by non-bankruptcy law.  See Motion, ¶35.  Debtor cites a single case, In re

Walnut Assocs., L.P., 461 B.R. 308 (Bankr. E.D. Pa. 2011), to support its flawed proposition

that RCG's interest claim should be reduced in equity due to "RCG's action, or in this case,

inaction combined with the substantial amounts it has recovered."  The Walnut case does not

help Debtor, *as it was reversed on this very same point*.  See In re Walnut Assocs., L.P., 473

B.R. 603, 609-11 (E.D. Pa. 2012) (holding that bankruptcy court erred in applying equitable

analysis to creditor's entitlement to prepetition default interest, which was governed

exclusively by terms of the loan agreement and applicable state law).

16.     Enforceability of interest under New York law is limited by the usury statutes, but the

contractual Default Rate of 11.294% is not usurious—either criminally or civilly—under New

York law.  See N.Y. Penal Law § 190.40 (defining criminal usury as charging 25% interest);

N.Y. Banking Law § 14-a(1) (defining civil usury as charging 16% interest).[9]  The Mortgage

---

[9] In any event, because the Mortgage Loan exceeds $2,500,000, RCG is immune from any claim or defense based on usury.  See N.Y. Gen. Oblig. Law § 5-501(6)(b) ("No law regulating the maximum rate of interest which may be charged, taken or received, including section 190.40 . . . of the penal law, shall apply to any loan or forbearance in the amount of two million five hundred thousand dollars or more.").

Loan Agreement clearly provides for Default Rate interest following a default, and Debtor

points to nothing in the Mortgage Loan Agreement or New York law that impairs RCG's

claim to prepetition default interest.  As to postpetition interest, as set forth in the Motion,

there is no equitable basis here to reduce RCG's contractual entitlement to default interest to

the extent it is oversecured.  See Motion, ¶40.

### RCG's Collection of Late Fees Was Appropriate

17.    Section 2.2.5 of the Mortgage Loan Agreement authorizes RCG to demand a late

payment charge of 5% of the unpaid amounts if any principal, interest or other amount is not

paid when due.  As shown in Exhibit 6 to the Motion, RCG assessed late fees from the time of

default through May 2014, and paid those late fees with funds collected from the accounts.

Thus, contrary to Debtor's assertion, late fees are not currently part of RCG's claim.  Debtor

also argues that collection of late fees is (i) duplicative of default interest and (ii) not

permissible following acceleration of the Mortgage Loan.

18.    New York law permits a lender to recover both default interest and late charges.  See,

e.g., Nextbridge Arc Fund, LLC v. Vadodra Prop., LLC, 929 N.Y.S.2d 201 (Sup. Ct. 2011).

Generally, late fees are intended to compensate lenders for the additional administrative costs

incurred in handling late payments.  See In re 785 Partners LLC, 470 B.R. at 136; In re

Empresas Omajede, Inc., 537 B.R. 63, 103 (Bankr. D.P.R. 2015).  Contrary to Debtor's

suggestion, RCG is not seeking any postpetition late fees under section 506(b) of the

Bankruptcy Code.  Rather, RCG assessed *prepetition* late fees for the added administrative

costs in processing the late payments collected from the accounts *prior to foreclosure*, which

the New Jersey Court found to be reasonable.  Cf. In re 785 Partners LLC, 470 B.R. at 136

14

(denying secured creditor's claim for late fees because debtor "never ma[d]e a late payment of

an amount due" under the applicable loan documents such that it would not "incur the

additional costs of handling such a late payment"); see also In re Empresas Omajede, Inc., 537

B.R. at 103 & n.35 (explaining that majority of courts that analyze interplay of default interest

and late charges do so under section 506(b)'s "reasonableness" test for *postpetition* interest

and fees). Accordingly, the proposition relied on by Debtor that an oversecured creditor may

not collect both *postpetition* default interest and *postpetition* late fees is irrelevant. The only

categories of postpetition charges for which RCG seeks reimbursement under section 506(b)

are default interest and attorney's fees and costs incurred in connection with this Case, both of

which RCG is entitled to receive as an oversecured creditor.

19.     RCG was also entitled to assess late fees after accelerating the Mortgage Loan.

Debtor acknowledges the general rule in New York that a lender may not collect late fees

after acceleration "'in the absence of a provision in the mortgage to the contrary.'" Objection

¶ 50 (quoting 4 B's Realty 1530 CR39, LLC v. Toscano, 818 F. Supp. 2d 654, 662 (E.D.N.Y.

2011)). Here, the Mortgage Loan Agreement is clear that RCG was entitled to assess Debtor

a 5% late payment charge "[i]f *any* principal, interest or *any* other sums due under the Loan

Documents is not paid . . . on the date on which it is due." Mortgage Loan Agreement § 2.2.5

(emphasis added). Following Debtor's repeated defaults, RCG exercised its right to

accelerate the loan in January 2012, which caused the outstanding Debt under the Mortgage

Loan Agreement to become "immediately due and payable." Id. § 8.1(b). Accordingly,

because the Mortgage Loan Agreement contains an express provision that entitled RCG to

assess late payment charges after acceleration, RCG's collection of the late payment charges

is permissible under New York law. See Orix Credit Alliance, Inc. v. Bell Realty, Inc., No.

93 Civ. 4949, 1995 WL 505891, at *9 (S.D.N.Y. Aug. 23, 1995) (allowing for imposition of

late charges after acceleration based on express terms of loan documents).

### The Payment After Default Provision Is Enforceable

20.      As explained in the Motion, under the plain language of the Mortgage Loan

Agreement, Debtor became obligated for the Payment After Default amount when RCG

received partial payment on the debt following the occurrence of an Event of Default.  See

Motion, ¶¶43-46.  The New Jersey Court agreed, and ruled prior to the bankruptcy filing that

this amount was reasonable and enforceable in accordance with the Mortgage Loan

Agreement.  See Motion, Ex. 4 at 42, lines 4-10.  Not only is the New Jersey Court ruling

entitled to full faith and credit in this Court, as explained supra, it is entirely consistent with

New York law.

21.      In New York, prepayment penalties may be charged even after default and

acceleration, as long as the underlying loan documents so provide.  See In re Madison 92nd

St. Assocs. LLC, 472 B.R. 189, 196-97 (holding that creditor was entitled to recover 5%

prepayment premium after default and acceleration).  Although Debtor argues that the

Payment After Default amount should be examined under a liquidated damages analysis,

Debtor does not actually conduct that analysis nor does Debtor offer any proof as to why the

Payment After Default amount should be deemed an unenforceable penalty.  Instead, Debtor

summarily states that "RCG is not suffering any loss as it continues to recover rents."

Objection ¶ 45.  Not only is this statement factually unsupported and untrue, but "[D]ebtor's

conclusory statement that the [Payment After Default] premium is disproportionate to the

actual damages suffered misses the point; the test is the foreseeable damages at the time of

16

contracting and not the actual damages at the time of the breach." In re Madison 92nd St.

Assocs. LLC, 472 B.R. at 197. The purpose of the Payment After Default premium is to

compensate RCG for the loss of its expected bargain to receive consistent loan payments, plus

interest, over the life of the Mortgage Loan, and the uncertainty at the time of contracting of

future changes in interest rates. It also factors in the assumption that "a quick default would

be followed by a costly delay in payment." Id. In short, even were this Court to permit

Debtor the opportunity to relitigate this issue—which it should not—Debtor has failed to raise

any grounds for denying RCG the right to collect the bargained-for Payment After Default

premium.

**RCG's Legal Fees and Costs of Enforcement Are Appropriate and Should Be
Allowed**

22.    RCG's claim includes reimbursement of fees and expenses of attorneys and other

professionals who provided services in connection with RCG's protection and enforcement of

its collateral and its rights under the Loan Documents. Debtor's objection is threefold: that

RCG has not submitted detailed time records in support of these claims, that there is

duplication in the amounts sought, and that RCG improperly seeks to include expenses

incurred in connection with its enforcement of the Mezzanine Loan.

23.    Attached hereto as Exhibit B are copies of invoices, including supporting time records,

for professional fees incurred by RCG through December 31, 2016.[10] These records have

been redacted where appropriate to protect privileged or confidential information. As these

---

[10] Stroock's invoice number 686768, dated November 1, 2016, was listed in Exhibit 7 to the Motion in the
incorrect amount of $84,248.82. The correct invoice, in the amount of $71,615.89, is included in Exhibit B
hereto, and the corrected amount is included in the December 31, 2016 claim amount set forth herein.

records demonstrate, the fees and expenses incurred are not duplicative, and are reasonable and in accordance with the Loan Agreement, as they relate to RCG's foreclosure action in state court, as well as protection and enforcement of its rights in this Case and pursuant to the Mortgage Loan documents.  Expenses incurred in connection with the Mezzanine Loan are not included, as RCG was represented by separate counsel, Rosenberg & Estis, P.C., in the Mezzanine Loan foreclosure, and RCG has not included Rosenberg's fees in its claim in this Case.

**Debtor May Not Seek to Reinstate the Mortgage Loan**

24.    Debtor speculates that there could possibly have been sufficient funds in the lockbox account to cure any defaults and "reinstate the Loan obligation within months of the Default Date."  See Objection at 20.  However, even assuming arguendo that Debtor had the means to cure defaults, Debtor did not negotiate for itself a right to cure in the Mortgage Loan Agreement,[11] and no such cure right exists in New York law in the absence of a contractual provision.  See Emigrant Funding Corp. v. Agard, 121 A.D.3d 935, 936 (N.Y. App. Div. 2014) (holding that lender was not obligated to provide borrower with notice of default prior to foreclosing on commercial mortgage because loan documents contained no such requirement).  Without citation, Debtor "submits in large part that [the Mortgage Loan Agreement] is against public policy as [it] . . . denies Borrower the right to cure an Event of Default."  Although there are statutory rights-to-cure available under New York law in the *residential* mortgage context, see N.Y. Real Prop. Acts. Law § 1304, no such public policy is

---

[11] See Mortgage Loan Agreement, §10.23.

recognized in New York for commercial mortgages, such as the Mortgage Loan at issue in this Case.

25.    Therefore, Debtor alternatively argues that it should be given the opportunity to deaccelerate and reinstate the Mortgage Loan pursuant to Section 1124 of the Bankruptcy Code.  Section 1124 governs impairment of claims and provides that a class is unimpaired if the plan, inter alia, "reinstates the maturity of such claim or interest as such maturity existed before default."  11 U.S.C. § 1124(2)(B).  Here, the original maturity date of the Mortgage Loan was July 5, 2016.  See Motion, Exhibit 1, Loan Agreement, at 12, 24.  That date has now passed, and Debtor may not seek to reinstate after the original maturity date under Section 1124.  See In re Liberty Warehouse Assocs. L.P., 220 B.R. 546, 549 (Bankr. S.D.N.Y. 1998) (holding that debtor could not reinstate "where the underlying claim has matured by its own terms"); accord In re Etienne Estates at Wash. LLC, No.1-14-40786-nhl, 2016 WL 1254739, at *10 (Bankr. E.D. N.Y. Mar. 30, 2016) ("A cure is not possible where a debt has matured under the contract's original terms; in such a case, the entirety of the debt is due, and there is no maturity to reinstate."); In re Ace-Texas Inc., 217 B.R. 719, 726 (Bankr. D. Del. 1998) ("[I]t makes no sense to reinstate the maturity of a claim that has already matured."). As the New Jersey Bankruptcy Court explained in In re Route One West Windsor L.P., 225 B.R. 76, 84 (Bankr. D.N.J. 1998): "A post-maturity date 'reinstatement' is therefore in reality an involuntary extension of the loan term and of the agreed maturity date.  This does not put the lender in the same position it would have been in if there had been no default, which is the purpose of Code section 1124(2)."

26.    Even if reinstatement was not barred by the final maturity of the Mortgage Loan, Debtor cites no authorities (other than the Entz-White case which it acknowledges has been overruled) in support of its contention that it could avoid its default interest obligations in a reinstatement scenario.  Indeed, there is substantial authority in this District to the contrary. See, e.g., In re 139–141 Owners Corp., 313 B.R. 364, 368  (S.D.N.Y. 2004) ("Because the denial of a mortgagee's contractual right to interest at a default rate does 'alter' the secured creditor's contractual rights within the meaning of subsection (D) of Section 1124(2) ... Section 1124(2) ... does not provide a statutory basis for judicial nullification of a contract right to default rate interest."); In re Frank's Nursery & Crafts, Inc.,  No. 04-15826, 2006 WL 2385418 at *4 (Bankr. S.D.N.Y. May 8, 2006) ("[A] plan that cures a mortgage default and de-accelerates the mortgage impairs the mortgagee's secured claim if it fails to provide for the payment of interest at the contractual default rate."); see also In re Sagamore Partners, Ltd., 620 F. App'x 620 (11th Cir. 2015).  Debtor's general cite to In re Taddeo, 685 F.2d 24 (2d Cir. 1982) does nothing to support its position.  See 139-141 Owners Corp., 313 B.R. at 368 ("In re Taddeo says nothing whatsoever about reinstatement of the pre-default interest rate.").

27.    Thus, there is no basis for Debtor to seek "reinstatement" of RCG's Mortgage Loan as of an earlier date, such as when the Mortgage Loan went into default, to seek to avoid the accrual of contractual default interest.  If Debtor had wished to attempt a cure and reinstatement under the Bankruptcy Code, it could have sought bankruptcy protection at that time, but it did not.  Instead, it remained in default and opposed RCG in state court while default interest accrued and legal bills mounted, and only sought bankruptcy protection once the process had played itself out unsuccessfully for Debtor.  It did not enter bankruptcy with a strategy to reinstate the Mortgage Loan, and the original maturity date has now passed.  Under

these facts, the Bankruptcy Code does not provide Debtor with a "do over" to try to erase the

consequences of its chosen course of conduct.

28.     Putting aside insider claims that Debtor itself believes are invalid (see Fourth

Amended Disclosure Statement at 17-18 [Docket No. 83]), there are only a small number of

prepetition creditors other than RCG in this Case, mainly holding trade claims which would

likely have been paid in the ordinary course absent Debtor's bankruptcy filing.  Essentially,

this Case is a two-party dispute between RCG and Debtor's ultimate equityholders.  In order

to be confirmable, Debtor's plan must provide non-accepting creditors with not less than the

amount such holders would receive if Debtor was liquidated under chapter 7.  See 11 U.S.C.

§ 1129(a)(7)(A).  While RCG disputes that any component of its claim is a penalty, in chapter

7 even a penalty is entitled to payment ahead of equity.  See 11 U.S.C. § 726(a)(4), (6).  Thus,

equity should not be heard to complain about a penalty in order to disallow a portion of

RCG's claim in its quest for a greater recovery in chapter 11.

29.     Further, section 502 sets forth the exceptions to the general rule that a timely filed

claim shall be allowed.  Unless and to the extent the claim falls into one of those exceptions,

the claim must be allowed, and there is no general power to disallow a claim based on notions

of equity or fairness.  See Picard v. Merkin (In re Bernard L. Madoff Inv. Secs. LLC), 515

B.R. 117, 156-57 (Bankr. S.D.N.Y. 2014); Harbinger Capital Partners LLC v. Ergen (In re

Lightsquared, Inc.), 504 B.R. 321, 341-44 (Bankr. S.D.N.Y. 2013); Sher v. JPMorgan Chase

Funding Inc. (In re TMST, Inc.), 518 B.R. 329, 355-57 (Bankr. D. Md. 2014), vacated in part,

2014 WL 6390312 (Bankr. D. Md. Nov. 14, 2014); cf. Law v. Siegel, 134 S. Ct. 1188, 1195-

96 (2014) (holding that Bankruptcy Court could not exercise equitable power to surcharge

exempt property given that Section 522 contains a number of carefully crafted exceptions with no equitable "catch all" and further provides that exempt property is "not liable for payment of any administrative expense").  An otherwise-allowable claim can by equitably subordinated under section 510(c) of the Bankruptcy Code, but that is a drastic remedy that is only permitted in limited circumstances where: (i) the creditor has engaged in inequitable conduct; (ii) the misconduct resulted in injury to other creditors or conferred an unfair advantage on the claimant creditor; and (iii) equitable subordination of the claim would not be inconsistent with other provisions of the Bankruptcy Code.  See, e.g., Benjamin v. Diamond (In re Mobile Steel), 563 F.2d 692, 699-700 (5th Cir. 1977).  Even in those egregious circumstances where equitable subordination is appropriate, the creditor's claim can only be subordinated to the claims of other creditors, and cannot be reduced to the level of (or below) equity.  See 11 U.S.C. § 510(c)(1) ("[T]he court may . . . under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of *another allowed claim* . . . ." (emphasis added)).  Yet this is precisely what Debtor is seeking to do, in the guise of "equitable disallowance."  See Objection at 21, ¶49 ("It is important to note that any such savings to the Debtor will in actuality benefit RCG as once the Debtor's creditors are paid in full, any excess sale proceeds will flow to Mezz, the Debtor's 100% owner, and RCG will be entitled to payment on account of its Mezz loan from any remaining proceeds.").

## CONCLUSION

30.     Accordingly, the Objection should be overruled, and RCG's Motion granted by the entry of an order (i) confirming that RCG is entitled to credit bid at the auction sale of the Property

in the amount of up to $23,355,389.71 and (ii) scheduling a further hearing after the auction

sale to determine the RCG's final allowed claim for purposes of distribution in this Case.

Exhibit 6 to the Motion was a summary of principal and interest amounts owing and amounts

received with respect to the Mortgage Loan through October 31, 2016.   Attached hereto as

Exhibit C is an updated summary reflecting principal and interest owed, and amounts received

through December 31, 2016.   RCG requests that it be permitted to credit bid up to

$23,355,389.71, the amount it is owed as of December 31, 2016, consisting of: (i) principal of

$17,730,689.83, accrued prepetition default interest of $3,221,962.29 and accrued postpetition

default interest of $798,493.43, each as reflected on Exhibit C, (ii) the Payment After Default

Premium of $891,000.00, and (iii) professional fees and costs of enforcement in the amount of

$713,244.16, with the foregoing amounts being without prejudice to the final calculation of

RCG's allowable claim.

Dated:  January 5, 2017
        New York, New York

STROOCK & STROOCK & LAVAN LLP


/s/ Kevin L. Smith
Kevin L. Smith
Harold A. Olsen
180 Maiden Lane
New York, NY 10038-4982
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*Counsel to RCG LV Debt IV Non-REIT Assets
Holdings, LLC*